**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| JOHNSON MEMORIAL MEDICAL CENTER, INC., | Case No. 15-20056 |
| JOHNSON MEMORIAL HOSPITAL, INC., | Case No. 15-20057 |
| HOME & COMMUNITY HEALTH SERVICES, INC., | Case No. 15-20060 |
| JOHNSON HEALTH CARE, INC., | Case No. 15-20061 |
| THE JOHNSON EVERGREEN CORPORATION, and | Case No. 15-20062 |
| JOHNSON PROFESSIONAL ASSOCIATES, P.C., | Case No. 15-20063 |
| | (Joint Administration Requested) |
| Debtors. | |

**ORDER (I) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTORS'
ASSETS; (II) APPROVING PROCEDURES FOR THE CURE, ASSUMPTION AND
ASSIGNMENT OF CONTRACTS;  (III) PROVIDING
CERTAIN PROTECTIONS TO SAINT FRANCIS *CARE*, INC.;
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of Johnson Memorial Medical Center, Inc. ("JMMC"),

Johnson Memorial Hospital, Inc. ("JMH"), Johnson Health Care, Inc. ("JHC"), and Home and

Community Health Services, Inc. ("HCHS"; together with JMMC, JMH and JHC, the

"Debtors"), pursuant to Bankruptcy Code sections 105(a), 363 and 365 and Federal Rules of

Bankruptcy Procedure 2002, 6004, 6006 and 9014, for entry of an order approving the Bid

Procedures, which are attached hereto as Exhibit 1 (Document No. [__]), in connection with (i)

the sale of all or substantially all of the Debtors' assets, (ii) approving the cure, assumption and

assignment of contracts, and (iii) and providing certain protections to Saint Francis *Care*, Inc.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the APA
(as such term is defined herein).

("SFC" or the "Buyer"), including the form and manner of service of the notice attached hereto

as Exhibit 2 (Document No. [__]) and the payment of the Break-Up Fee and Expense

Reimbursement (as such terms are defined below), and granting other relief related thereto; and

the Court having reviewed the Motion, and having considered the statements of counsel and

evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the

Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334, (ii) venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408

and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion

and the Hearing was sufficient under the circumstances, and no further or other notice is

required; and (v) a reasonable opportunity to object or be heard regarding the relief requested in

the Motion has been afforded to all interested persons; after due deliberation the Court having

determined that the relief requested in the Motion (x) represents a sound exercise of the Debtors'

business judgment, (y) is necessary and essential to maximize the value of the Debtors' estates,

and (z) is in the best interests of the Debtors, their estates and their creditors; and upon the record

herein; and after due deliberation thereon; and good and sufficient cause having been shown;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

   A.    The Debtors have articulated good and sufficient reasons for, and the best

interests of their estates will be served by, this Court granting the relief requested in the Motion,

including approval of (i) the Bid Procedures, (ii) the Break-Up Fee and Expense Reimbursement,

as provided for in the APA attached to the Motion as Exhibit [___] (the "APA"), for the sale of

all or substantially all of the Debtors' assets to the Buyer (the "Sale Transaction"), (iii) the form

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

and manner of the Auction and Sale Notice, (iv) and the procedures for the cure, assumption and assignment of executory contracts and unexpired leases, and (v) relief related thereto.

B.      The Bid Procedures are fair, reasonable and appropriate and are designed to maximize the recovery with respect to the Sale Transaction.

C.      The Break-Up Fee and Expense Reimbursement to be paid under the circumstances described herein to the Buyer are (i) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of Bankruptcy Code section 503(b), (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Buyer's entry into the APA, and (iii) reasonable and appropriate in light of the size and nature of the proposed Sale Transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Buyer.

D.      Moreover, the Break-Up Fee and Expense Reimbursement are essential inducements and conditions relating to the Buyer's entry into, and continuing obligations under, the APA.  Unless it is assured that the Break-Up Fee and Expense Reimbursement will be available as provided in the APA, the Buyer is unwilling to remain obligated to consummate the Sale Transaction or otherwise be bound under the APA (including the obligation to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bid Procedures).  The Break-Up Fee and Expense Reimbursement induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors, their creditors and other bidders can rely.   Accordingly, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

E.      The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and Expense Reimbursement under the circumstances, timing and procedures set forth in the Motion.

F.      The Debtors have provided support for their decision to authorize the payment of the Break-up Fee and Expense Reimbursement sufficient to satisfy all conditions set forth in the Bankruptcy Rules and the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Connecticut.

G.      The Auction and Sale Notice is appropriate, adequate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Transaction and the Bid Procedures.  No other or further notice is required for the Sale Transaction or the Bid Procedures, as set forth herein and in the Motion.  The Debtors have demonstrated a compelling and sound business justification for the limitation of credit bidding at the Auction, except with respect to SFC, as is described in the Bid Procedures.

H.      The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a subsequent Sale Hearing (as such term is defined in the Bidding Procedures) to consider granting other relief requested in the Motion, including approval of the Sale Transaction and the transfer of the assets to the Buyer free and clear of all Claims and Encumbrances pursuant to Bankruptcy Code section 363(f).

I.      As demonstrated by the compelling and sound business justifications set forth by the Debtors in the Motion and at the Hearing, the entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and therefore

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Bid Procedures attached hereto as <u>Exhibit 1</u> are approved in all respects and shall govern all bids and bid proceedings relating to the sale of the Debtors' assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

3.      The failure specifically to include or reference any particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bid Procedures be authorized and approved in their entirety.

4.      The form and manner of service of the Auction and Sale Notice described in the Motion, and attached hereto as <u>Exhibit 2</u>, are approved in all respects.  Within five (5) business days after the entry of this Order, the Debtors shall serve the Auction and Sale Notice by first class mail on: (i) the office of the United States Trustee, (ii) all creditors as defined in Section 101(1) of the Bankruptcy Code, (iii) all entities known to have asserted any lien, interest or encumbrance upon the Debtors' assets, (iv) counsel for SFC, (v) counsel for the Official Committee of Unsecured Creditors, if any, (vi) counsel to the Debtors' prepetition secured lenders, (vii) all entities known by the Debtors to have expressed an interest in acquiring the Debtors' assets in the previous calendar year, (viii) the United States Attorney's Office, (ix) the United States Department of Justice, (x) the Internal Revenue Service, (xi) the Pension Benefit Guaranty Corporation; (xii) appropriate state regulatory agencies, including, without limitation, the Connecticut Department of Energy & Environmental Protection, the Connecticut Attorney General's Office, and the Connecticut Department of Revenue Services; (xiii)  all counterparties to any executory contract or unexpired lease; (xiv) any other persons known by the Debtors to hold, assert or have threatened to assert and claims against the Debtors, including, without

limitation, any malpractice or tort claims; (xv) Healthcare Finance Group, LLC and its counsel, and (xvi) all other parties who filed requests for notice under Bankruptcy Rule 2002 in these cases. Service of the Auction and Sale Notice, as set forth herein, constitutes sufficient notice of the Auction and Sale Hearing.

5.     The deadline for submitting a Qualified Bid shall be [_____ ___, 20__] at 5:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline").  All Potential Bidders are required to provide copies of their bids so as to be received by hand and by electronic mail by the following parties on or before the Bid Deadline: by (a) counsel for the Debtor, Reid and Riege, P.C., One Financial Plaza, Hartford, CT 06103 (Attn: Eric Henzy (ehenzy@rrlawpc.com), Jon P. Newton (jnewton@rrlawpc.com, Mark X. Ryan (mryan@rrlawpc.com)); (b) counsel for SFC, Hinckley, Allen & Snyder LLP, 20 Church Street, Hartford, CT 06103, (Attn: William S. Fish, Jr. (wfish@hinckleyallen.com), Thomas S. Marrion (tmarrion@hinckleyallen.com), and Sarah M. Lombard (slombard@hinckleyallen.com)); (c) the Office of the United States Trustee for the District of Connecticut, [____] Division [_____ (Attn: _____ (_____)]; (d) People's United Bank, c/o Neubert, Pepe & Monteith, P.C., 195 Church Street, New Haven CT, 06510 (Attn: Douglas S. Skalka (dskalka@npmlaw.com)); (e) counsel for Healthcare Finance Group, LLC, Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019-9710 (Attn: Benjamin Mintz (benjamin.mintz@kayescholer.com) and Robinson & Cole LLP, 280 Trumbull Street, Hartford, Connecticut 06103 (Attn: Michael Enright (menright@rc.com)); and (f) counsel for any Official Committee of Unsecured Creditors appointed in this case (collectively, the "Notice Parties").

6.     Subject to the provisions of the Bidding Procedures, the Debtors are authorized to solicit, initiate, encourage, facilitate, or take any other action designed to facilitate any inquiries

or proposals regarding any sale of assets, assumption of liabilities or similar transactions with

third parties until the Bid Deadline.

7.      The Buyer shall constitute a Qualified Bidder (as defined in the Bid Procedures)

for all purposes and in all respects with regard to the Bid Procedures.

8.      Unless the Debtors receive an additional Qualified Bid, it will not hold an

Auction, and SFC shall be named the Successful Bidder.

9.      If the Debtors receive an additional Qualified Bid (meaning at least one Qualified

Bid in addition to the Buyer's existing Qualified Bid), the Debtors shall conduct the Auction on

[_____ ___, 20__] at 12:00 noon (Prevailing Eastern Time) at the offices of Reid and

Riege, P.C., One Financial Plaza, Hartford, CT 06103, or such other place and time as the

Debtors shall notify Qualified Bidders.

10.     If an Auction is conducted, the Qualified Bidder with the next highest or

otherwise best Qualified Bid (including the Buyer), as determined by the Debtors in the exercise

of their business judgment, at the Auction shall be required to serve as a back-up bidder

(the "Back-Up Bidder") and keep such bid open and irrevocable until one (1) business day after

the closing of the Sale Transaction with the Successful Bidder.  Following the Sale Hearing, if

the Successful Bidder fails to consummate the approved sale because of a breach or failure to

perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new

Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale

with the Back-Up Bidder without further order of the Bankruptcy Court.

11.     Except as otherwise provided herein or in the APA, Good Faith Deposits shall be

returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up

Bidder by no later than the fifth (5th) business day following the Sale Hearing.  The Good Faith

Deposit of the Back-Up Bidder shall be held by the Debtors until one (1) business day after the closing of the Sale Transaction with the Successful Bidder.  The Good Faith Deposit of the Back-Up Bidder shall be returned within five (5) business days after the closing the sale between the Debtors and the Successful Bidder.

12.     Objections to the Sale Transaction shall be in writing, shall state the basis of such objection with specificity and shall be filed with the Court, and served so as to be received on or before three days after the Auction, at 4:00 p.m. (prevailing Eastern Time) on the Notice Parties.

13.     The Sale Hearing, at which the Debtors shall seek approval of the Successful Bid, shall be held in this Court on [one week after Auction], at 10:00 a.m. (prevailing Eastern Time). The Sale Hearing may be adjourned or rescheduled without further notice other than an announcement of the adjourned date at the Sale Hearing.

14.     The failure of any person or entity to timely file its objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or the consummation and performance of the Sale Transaction, if any (including the transfer free and clear of all Claims and Encumbrances of the Debtors' assets pursuant to the Sale Transaction).

15.     The Break-Up Fee (in the amount of $750,000) and the Expense Reimbursement (in an amount not to exceed $200,000) are hereby approved and the Debtors are hereby authorized and directed to perform their respective obligations thereunder without further application to or order from the Court.  In the event of the consummation of the Sale Transaction to a party that is not the Buyer or affiliated with the Buyer, the Break-Up Fee and Expense Reimbursement shall be paid out of the cash proceeds of the sale to a Successful Bidder (other than the Buyer).  In the event of the consummation of the Sale Transaction to a party that is not the Buyer or affiliated with the Buyer, the Break-Up Fee and Expense Reimbursement shall

constitute a super-priority administrative expense of the Debtors under Section 503(b) and 507(a)

of the Bankruptcy Code as provided in the APA, but shall be subject in priority to the Debtors'

indebtedness to Healthcare Finance Group, LLC ("HFG").

16.     The Assumption and Assignment Procedures substantially in the form attached

hereto as Exhibit 3 are hereby approved.

17.     The Debtors are authorized and empowered to take such steps, expend such sums

of money and do such other things as may be necessary to implement and effect the terms and

requirements established and relief granted in this Order.

18.     To the extent, if any, anything contained in this Order conflicts with the Motion,

this Order and the provisions of the Bid Procedures attached hereto shall govern and control.

19.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order

shall take effect immediately upon its entry.

20.     This Court shall retain jurisdiction to hear and determine all matters arising from

or          relating          to          the          implementation          of          this          Order.

EXHIBIT 1

**Bid Procedures**

Set forth below are the bid procedures (the "Bid Procedures") to be employed with respect to the sale of all or substantially all of the assets (the "Assets") of Johnson Memorial Medical Center, Inc., Johnson Memorial Hospital, Inc., Home & Community Health Services, Inc., and Johnson Health Care, Inc., debtors and debtors-in-possession (collectively, the "Debtors") in the chapter 11 cases (collectively, the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), Case No. [  ].

The Debtors propose to sell substantially all of their assets (the "Sale Transaction") to the stalking horse bidder Saint Francis *Care*, Inc. ("SFC" or "Buyer") for the aggregate purchase price (the "Purchase Price") set forth in that certain Asset Purchase Agreement, dated January 14, 2015, by and among SFC and the Debtors (the "APA"). The Sale Transaction pursuant to the APA is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Participation Requirements**

Any person desiring to submit a bid for the all or part of the Debtors' assets (a "Potential Bidder") will be required to deliver (unless previously delivered) to the Debtors, on or before the Bid Deadline (as defined below), the following in addition to the other materials required hereby (collectively, the "Participation Requirements"):

        (1)     an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

        (2)     satisfactory written evidence of available funds or a firm, irrevocable and unconditional commitment for financing sufficient for the Potential Bidder to consummate the Sale Transaction.

The financial information and credit-quality support of any Potential Bidder must demonstrate the financial capability of the Potential Bidder to timely consummate the Sale Transaction pursuant to a Qualified Bid (as defined below).

**Due Diligence**

The Debtors will afford any Potential Bidder who satisfies the Participation Requirements such due diligence access or additional information as the Debtors, in their business judgment, determine to be reasonable and appropriate; provided, however, that the same access and information must also be made available to the Buyer.  Additional due diligence will not be provided after the Bid Deadline.

Interested investors requesting information about the qualification process, and Qualified Bidders (as defined below) requesting information in connection with their due diligence, should contact [_____].

### Bid Deadline

A Potential Bidder that desires to make a bid must deliver written copies of its bid by hand and email to the following parties so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on [_____] (the "Bid Deadline"): by (a) counsel for the Debtor, Reid and Riege, P.C., One Financial Plaza, Hartford, CT 06103 (Attn: Eric Henzy (ehenzy@reidandriege.com), Jon P. Newton (jnewton@rrlawpc.com, Mark X. Ryan (mryan@rrlawpc.com)); (b) counsel for SFC, Hinckley, Allen & Snyder LLP, 20 Church Street, Hartford, CT 06103, (Attn: William S. Fish, Jr. (wfish@hinckleyallen.com), Thomas S. Marrion (tmarrion@hinckleyallen.com), and Sarah M. Lombard (slombard@hinckleyallen.com)); (c) the Office of the United States Trustee for the District of Connecticut, [_____] Division [_____ (Attn: _____ (_____)]; (d) People's United Bank, c/o Neubert, Pepe & Monteith, P.C., 195 Church Street, New Haven CT, 06510 (Attn: Douglas S. Skalka (dskalka@npmlaw.com)); (e) Healthcare Finance Group, LLC, c/o Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019-9710 (Attn: Benjamin Mintz (benjamin.mintz@kayescholer.com) and Robinson & Cole LLP, 280 Trumbull Street, Hartford, Connecticut 06103 (Attn: Michael Enright (menright@rc.com)); and (f) counsel for any Official Committee of Unsecured Creditors appointed in this case.

### Bid Requirements

Each bid must be a written offer from a Potential Bidder, not contingent on any event not provided for in the APA, including any due diligence investigation, receipt of financing or receipt of further approvals (other than customary regulatory approvals), that (1) is received in accordance with the time deadlines and in the form provided for herein; (2) offers to consummate the Sale Transaction on terms no less favorable to the Debtors than those set forth in the APA; (3) provides that such Potential Bidder shall assume the Reimbursement Obligation (as such term is defined in the APA) directly attributable to Debtors and the Workers' Compensation Liabilities (as such term is defined in the APA) directly attributable to Debtors or provide a substitute guaranty and letter of credit substantially similar to the Credit Support (as such term is defined in the APA) and acceptable to the Hartford Fire Insurance Company and sufficient to release the Buyer from any obligations thereunder; (4) provides adequate assurances that such Potential Bidder will provide services equivalent to those provided by the Buyer under the Affiliation Agreements (as such term is defined in the APA) between the date of Bankruptcy Court approval and the closing date for the applicable Alternative Transaction and continue to operate the Debtors' businesses following the closing of the Alternative Transaction; (5) includes a marked copy of the APA to show any proposed amendments thereto (the "Modified Purchase Agreement") and a clean and executed Modified Purchase Agreement; (6) includes a statement that there are no conditions precedent to the Potential Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid; (7) states that such offer is binding and irrevocable until the consummation of the Sale Transaction; (8) offers to pay a purchase price that is greater than the purchase price contained in the APA, including all cash, non-cash consideration and Assumed Liabilities, plus the Break-Up

Fee in cash ($750,000), plus the Expense Reimbursement (in an amount in cash not to exceed $200,000), plus $250,000, and otherwise on terms at least as favorable to Debtors as those set forth in the APA (the "Initial Bid Increment"); provided, however, after such Initial Bid Increment, all further overbids must be in increments of at least $100,000; provided, further, that if such overbid is made against a bid last made by SFC, then such overbid must be at least $100,000 more than such SFC bid plus the Break-Up Fee in cash ($750,000) plus the Expense Reimbursement (in an amount in cash not to exceed $200,000), and the Debtors shall, in their discretion, have determined that such overbids satisfy such bidding increment requirement; (9) discloses the identity of each entity that will be bidding or otherwise participating or investing in connection with such bid including their affiliates, and the complete terms of any such participation; (10) includes the names and contact information of members of the Potential Bidder who will be available to answer questions regarding the offer; (11) includes the names of the Potential Bidder's external advisors including financial, legal and accounting firms, as well as industry consultants or other resources; (12) provides adequate assurances that it will offer employment to the Debtors' employees as provided for in the APA; (13) contains a description of (a) how the Potential Bidder intends to comply with regulations or licensing, or the ability to do so through management or ownership of similar facilities, required for the operation of the Facilities (as such term is defined in the APA), and (b) relevant experience owning and/or operating health care facilities similar to the Facilities; (14) identifies with particularity which executory contracts and unexpired lease the Potential Bidder wishes to take assignment of and provides details of the Potential Bidder's proposal to pay any related cure costs (subject to the Potential Bidder's right to make changes consistent with the APA or the Sale Order); (15) contains sufficient information concerning the Potential Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned; (16) provides adequate assurances that it is able to pay each of the Break-Up Fee and Expense Reimbursement to SFC in cash; (17) contains all other information reasonably requested by the Debtors; and (18) provides a statement acknowledging that the Potential Bidder (other than the Buyer) is not entitled to any break-up fee, termination fee, expense reimbursement or similar payment.

The Debtors will consider all bids submitted whether or not they conform to the form set forth in the APA and will consider bids for less than all of the assets proposed to be sold under the APA; provided, however, following the date of the Sale Hearing, and only if the APA is approved by the Bankruptcy Court, Sellers will not participate in any discussions with, or furnish any information to, any person or entity with respect to any Alternative Transaction regardless of the terms thereof. Should any overbidding take place as set forth herein, the Buyers shall have the right, but not the obligation, to participate in the overbidding and to be approved as the overbidder at the Sale Hearing based upon any such overbid.

Additionally, bids must be accompanied by (1) a wire transfer to the Debtors of an amount in immediately available funds equal to at least $1,500,000 (the "Good Faith Deposit"), and (2) written evidence of available cash or a firm, irrevocable and unconditional commitment for financing and such other evidence of ability to consummate the transaction as the Debtors may reasonably request. To the extent any Potential Bidder proposes to include non-cash consideration in its bid (other than assumption of debt), such non-cash consideration must be freely marketable and such bid must be accompanied by the form of note or other type of

instrument in connection with such non-cash consideration. Except as set forth herein with respect to the Buyer, no party shall be entitled to credit bid on account of any prepetition claim against the Debtors pursuant to Bankruptcy Code section 363(k) or otherwise.

## Qualified Bids and Bidders

A bid received from a Potential Bidder that meets the requirements set forth in the preceding three paragraphs will be considered a "Qualified Bid" if the Debtors, in consultation with their advisors, reasonably believe that such bid is higher or otherwise better than the bid set forth in the APA and would be reasonably expected to be consummated if selected as the Successful Bid (as defined below).

The Debtors will review each bid received from a Potential Bidder and, following consultation with People's United Bank ("People's") and HFG, determine whether it meets the requirements of a Qualified Bid. A Potential Bidder making a Qualified Bid who has also satisfied the Participation Requirements will be deemed a "Qualified Bidder." The APA is a Qualified Bid and the Buyer is a Qualified Bidder for all purposes and requirements of these Bid Procedures at all times.

In determining whether a bid is a Qualified Bid, the Debtors will consider factors such as (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) the risks associated with any non-cash consideration in such bid, (4) the ability of the Potential Bidders to obtain appropriate regulatory approvals, (5) any excluded assets or executory contracts and leases, and (6) any other factors deemed relevant by the Debtors in their reasonable discretion.

In addition, the Debtors, following consultation with People's and HFG, may reject any bid that (1) is on terms that are more burdensome or conditional than the terms of the APA, (2) includes non-cash consideration which is not freely marketable, (3) is subject to any due diligence, financing condition or other contingencies or conditions that are not included in the APA, or (4) is received after the Bid Deadline.

The Good Faith Deposits of all Qualified Bidders shall be held by an escrow agent in a separate account for the Debtors' benefit. If a Successful Bidder fails to consummate an approved sale of the Assets because of a breach of a failure to perform on the part of such Successful Bidder, such Successful Bidder's Good Faith Deposit will be forfeited to the Debtors as provided for in the APA.

Subject to other provisions of these Bid Procedures, the Debtors will, no later than 5:00 p.m. (prevailing Eastern Time) on [_____ __, 20__], advise each Potential Bidder that submits a bid whether its bid is a Qualified Bid.

## Auction Participation

Unless otherwise agreed to by the Debtors, only Qualified Bidders, People's, HFG, and their respective legal or financial professionals are eligible to attend or participate at the Auction

(as defined below). Subject to the other provisions of these Bid Procedures, if the Debtors do not receive any Qualified Bids other than the APA or if no Qualified Bidder other than the Buyer has indicated its intent to participate in the Auction, the Debtors will not hold an auction and the Buyer will be named the Successful Bidder.

## Auction

If more than one Qualified Bid has been received and more than one Qualified Bidder has indicated its intent to participate in the Auction, the Debtors will conduct an auction (the "Auction") for the sale of all or substantially all of the Debtors' assets.  Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale Transaction.  Prior to the Auction, the Debtors will select, in their sole reasonable discretion, the Qualified Bid that represents the then-highest or otherwise best value to the Debtors (the "Baseline Bid") to serve as the starting point for the Auction.

The Auction shall take place at 12:00 noon (prevailing Eastern Time) on [_____ __, 20__] at the offices of Reid and Riege, P.C., One Financial Plaza, Hartford, CT 06103.  At the Auction, only the Buyer and other Qualified Bidders will be permitted to increase their bids or make any subsequent bids.  The bidding will start at the purchase price and terms proposed in the Baseline Bid and after the Initial Bid Increment will continue in increments of at least $100,000 in cash or cash equivalents; provided, however, that if such overbid is made against a bid last made by SFC, then such overbid must be at least $100,000 more than such SFC bid plus the Break-Up Fee in cash ($750,000) plus the Expense Reimbursement (in an amount in cash not to exceed $200,000).  Qualified Bidders may participate in person or by representative.  The Auction shall be transcribed by a qualified court reporter.

Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction and such other information as the Debtors reasonably determine is relevant, the Debtors may conduct the Auction in the manner they reasonably determine, in their business judgment and following consultation with People's and HFG, will promote the goals of the bid process, will achieve the maximum value for all parties in interest and is not inconsistent with any of the provisions of these Bid Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.   Such rules will provide that (1) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder; (2) all bids will be made and received in one room, on an open basis, and all other Qualified Bidders will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction; and (3) each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous bid at the Auction.  Notwithstanding anything contained in these Bidding Procedures, the Debtors may modify or waive any provisions of these Bidding Procedures at the Auction if, in their reasonable judgment following consultation with People's and HFG, such modification or waiver will better promote the goals of the Auction.

The Auction shall continue until there is only one offer that the Debtors determine, following consultation with People's and HFG and subject to Bankruptcy Court approval, is the highest or best offer from among the Qualified Bidders (including the Buyer) submitted at Auction.  In making this decision, the Debtors may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder, the effect of the Sale Transaction on the patients of the Debtors, and the net benefit to the Debtors' estates (the "Successful Bid"). The Qualified Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the APA or the Modified Purchase Agreement, as applicable.

Immediately prior to the conclusion of the Auction, the Debtors shall (1) review each bid made at the Auction on the basis of financial and contractual terms and such other factors as may be relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (2) identify the Successful Bid; and (3) notify all Qualified Bidders at the Auction, prior to its conclusion, of the name or names of the Successful Bidder and the amount and other material terms of the Successful Bid.

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of the APA.

## SFC Reservation of Rights

SFC, as participant in the postpetition senior secured lending facility with the Debtors, and/or its assignee, has the right to submit a credit bid for  the assets up to the full amount of SFC's secured claim in accordance with § 363(k) of the Bankruptcy Code; provided, however, that SFC's right to credit-bid shall not limit the Successful Bidder's obligation to pay the HFG debt in full at closing unless the Successful Bidder and HFG agree on the terms of assumption of such debt.

## Right to Credit Break-Up Fee and Expense Reimbursement

With respect to any subsequent bid(s) made by SFC and/or its assignee, SFC and/or its assignee has the right in all such subsequent bid(s) to receive a credit or credits up to the full amount of the Break-Up Fee and the Expense Reimbursement with respect to such subsequent bid(s).

## Acceptance of Qualified Bids

The Debtors presently intend to sell all or substantially all of their assets to the Qualified Bidder that submits the highest and best bid.  The Debtors' presentation to the Bankruptcy Court for approval of any Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will be deemed to have accepted a bid only when it has been approved by the

Bankruptcy Court at the Sale Hearing (defined below).  After conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities.

### Assumption of Executory Contracts and Unexpired Leases

The APA may provide for the assumption and assignment of executory contracts and unexpired leases to the Buyer.  The proposed process for evaluating which executory contracts and unexpired leases will be assigned should be similar to the process proposed in the APA.  In all circumstances, the Buyer or Qualified Bidder shall be responsible for all cure amounts under Bankruptcy Code section 365.

### Modifications

The Debtors, following consultation with People's and HFG, may (1) determine, in their business judgment, which bid or bids, if any, constitute the highest or otherwise best offer for the Debtors' assets; (2) reject, at any time before entry of an order of the Bankruptcy Court approving any bid as the Successful Bid, any bid that, in the Debtors' sole discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (c) contrary to the best interests of the Debtors and the Debtors' estates and creditors; provided, that Buyer's bid and the APA, after entry of these Bidding Procedures Order, may not be rejected under (a), (b) or (c) of this provision; and (3) withdraw, in its business judgment, the Motion if contrary to the best interests of the Debtors and the Debtors' estates and creditors.

### Sale Hearing

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin on [_____ ___, 20__] at 10:00 a.m. (prevailing Eastern Time), to approve and authorize the Sale Transaction to the Successful Bidder on terms and conditions determined in accordance with the Bid Procedures.

### Break-Up Fee or Expense Reimbursement

In the event that the APA is terminated under the circumstances described in the APA, to the extent approved in the Bidding Procedures Order, the Debtors shall pay the Buyer the Break-Up Fee and Expense Reimbursement as, when and to the extent provided in the APA.

The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement shall survive the termination of the APA, dismissal or conversion of the Bankruptcy Case, and confirmation of any plan of reorganization or liquidation, including the Plan, and shall constitute a super-priority administrative expense of the Debtors under section 503(b) and 507(a) of the Bankruptcy Code to the extent so provided in the APA.

**No Entitlement to Fees for Potential Bidders or Qualified Bidders**

Neither the tendering of a bid nor the determination that a bid is a Qualified Bid shall entitle a potential bidder or a Qualified Bidder to any break-up, termination or similar fee and all potential bidders and Qualified Bidders waive any right to seek a claim for substantial contribution.

**Back-Up Bidder and Return of Good Faith Deposit**

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid (including the Buyer), as determined by the Debtors in the exercise of their business judgment, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until one (1) business day after the closing of the Sale Transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court.

Except as otherwise provided herein or in the APA, Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the Sale Hearing. The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until one (1) business day after the closing of the Sale Transaction with the Successful Bidder. The Good Faith Deposit of the Back-Up Bidder shall be returned within five (5) business days after the closing the sale between the Debtors and the Successful Bidder.

EXHIBIT 2

NOTICE

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| JOHNSON MEMORIAL MEDICAL CENTER, INC., | Case No. 15-20056 |
| JOHNSON MEMORIAL HOSPITAL, INC., | Case No. 15-20057 |
| HOME & COMMUNITY HEALTH SERVICES, INC., | Case No. 15-20060 |
| JOHNSON HEALTH CARE, INC., | Case No. 15-20061 |
| THE JOHNSON EVERGREEN CORPORATION, and | Case No. 15-20062 |
| JOHNSON PROFESSIONAL ASSOCIATES, P.C., | Case No. 15-20063 |
| Debtors. | (Joint Administration Requested) |

## NOTICE OF AUCTION AND SALE

**PLEASE TAKE NOTICE** that on [_____ ___, 20__], the above-referenced debtors and debtors-in-possession (collectively, the "Debtors"), filed their Motion of Debtors for Orders (I) Approving (A) Bid Procedures, (B) Procedures for the Cure, Assumption and Assignment of Contracts, and (C) Providing Certain Protections to Saint Francis *Care*, Inc., and (II) Authorizing the Sale of Substantially All of the Debtors' Assets to Saint Francis *Care*, Inc. (the "Sale Motion") with the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Bankruptcy Court"). The Debtors have received a Qualified Bid from Saint Francis *Care*, Inc. ("Buyer").  All parties that may be interested in submitting a bid for the substantially all of the Debtors' assets[3] or any portion thereof or taking part in the Auction must

---

[3] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in the Bid Procedures.

read carefully both the Bid Procedures and the order approving the Bid Procedures (the "<u>Bid
Procedures Order</u>").

**PLEASE TAKE FURTHER NOTICE** that on [_____ __, 20__], following a
hearing held on [_____ __, 20__], the Bankruptcy Court entered the Bid Procedures Order
and scheduled a hearing to consider the Sale Motion for [_____ __, 20__] (prevailing Eastern
Time) (the "<u>Sale Hearing</u>"). You may obtain a copy of the APA (as such term is defined in the
Bid Procedures) by making a written request to the undersigned counsel.

Only those parties that submit Qualified Bids may participate in the Auction; if you are
interested in determining how to submit such a Qualified Bid, you must comply with the terms of
the Bid Procedures. Any party in interest wishing to receive a complete set of the APA, the Sale
Motion, and the Bid Procedures Order may do so free of charge by contacting Reid and Riege,
P.C., One Financial Plaza, Hartford, CT 0610, Attn: Eric Henzy.

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in this
process and submit a bid for the Assets, any portion thereof, or other of the Debtors' assets, must
submit its competing bid prior to [_____ ___, 20__], at 5:00 p.m. (prevailing Eastern Time) (the
"<u>Bid Deadline</u>") to: (a) counsel for the Debtors, Reid and Riege, P.C., One Financial Plaza,
Hartford, CT 06103 (Attn: Eric Henzy (Attn: Eric Henzy (ehenzy@rrlawpc.com), Jon P. Newton
(jnewton@rrlawpc.com, Mark X. Ryan (mryan@rrlawpc.com)); (b) counsel for SFC, Hinckley,
Allen & Snyder LLP, 20 Church Street, Hartford, CT 06103, (Attn: William S. Fish, Jr.
(wfish@hinckleyallen.com), Thomas S. Marrion (tmarrion@hinckleyallen.com), and Sarah M.
Lombard (slombard@hinckleyallen.com)); (c) the Office of the United States Trustee for the
District of Connecticut, [____] Division [_____ (Attn: _____ (_____)];
(d) People's United Bank, c/o Neubert, Pepe & Monteith, P.C., 195 Church Street, New Haven

CT, 06510 (Attn: Douglas S. Skalka (dskalka@npmlaw.com)); (e) Healthcare Finance Group, LLC, c/o Kaye Scholer LLP, 250 West 55th Street, New York, New York 10019-9710 (Attn: Benjamin Mintz (benjamin.mintz@kayescholer.com) and Robinson & Cole LLP, 280 Trumbull Street, Hartford, Connecticut 06103 (Attn: Michael Enright (menright@rc.com)); and (f) counsel for any Official Committee of Unsecured Creditors appointed in this case.

**PLEASE TAKE FURTHER NOTICE** that if a Qualified Bid (other than Buyer's Qualified Bid) is received by the Bid Deadline, an auction (the "Auction") with respect to a contemplated transaction shall take place on [_____ __, 20__], at 12:00 noon (prevailing Eastern Time) at the offices of Reid and Riege, P.C., One Financial Plaza, Hartford, CT 06103. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Buyer will be deemed the Successful Bidder, the APA will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek approval of and authority to consummate the transaction contemplated by the APA.

Only a Qualified Bidder who has submitted a Qualified Bid will be eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders, the Committee, Healthcare Finance Group, LLC ("HFG"),  People's United Bank ("People's"), and the Debtors shall be permitted to attend the Auction. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the Baseline Bid as disclosed to all Qualified Bidders prior to commencement of the Auction, with any initial bid over the Baseline Bid being at least the amount of the Baseline Bid plus the Break-Up Fee in cash ($750,000), plus the Expense Reimbursement (in an amount in cash not to exceed $200,000), plus $250,000, and bidding thereafter continuing in increments of at least $100,000; provided, further, that if such overbid is made against a bid last made by SFC, then

such overbid must be at least $100,000 more than such SFC bid plus the Break-Up Fee in cash ($750,000) plus the Expense Reimbursement (in an amount in cash not to exceed $200,000). The Successful Bid shall be determined by the Debtors in their discretion after, in consultation with the Committee, People's and HFG, or as determined by the Bankruptcy Court in the event of a dispute.

At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court for approval. The Debtors will sell the Assets or any portion thereof to the Successful Bidder. If the Successful Bidder fails to consummate an approved sale because of a breach or a failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid, as approved at the Sale Hearing, shall be deemed to be the Successful Bid and the Debtors shall be authorized to effect such Sale without further order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the Procedures Manual for the Electronic Case Filing System can be found at [____], the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, in text-searchable Portable Document Format (PDF), Microsoft Word or any other Windows-based word processing format (in either case, with a hard-copy delivered directly to Chambers), and shall be served upon: (a) the Notice Parties; and (b) all those persons and entities that have formally requested notice by filing a written request for notice, pursuant to Bankruptcy Rule 2002 and the Local Bankruptcy Rules, so as to be actually received no later than [_____ ___, 20___] at 4:00 p.m. (prevailing Eastern Time). Only those responses that are timely filed, served and received

will be considered at the Hearing. Failure to file a timely objection may result in entry of orders

granting the Motion as requested by the Debtors.


Dated: [_____ ___, 20__]

**REID AND RIEGE, P.C.**

EXHIBIT 3

Set forth below are the procedures for assumption and assignment of executory contracts and unexpired leases to be employed with respect to the sale of all or substantially all of the assets of Johnson Memorial Medical Center, Inc., Johnson Memorial Hospital, Inc., Home & Community Health Services, Inc., and Johnson Health Care, Inc., debtors and debtors-in-possession (collectively, the "Seller Debtors") in their chapter 11 cases pending in the United States Bankruptcy Court for the District of Connecticut.

The Seller Debtors propose to sell substantially all of their assets to the stalking horse bidder Saint Francis *Care*, Inc. ("SFC") as set forth in that certain Asset Purchase Agreement, dated January 14, 2015, by and among SFC and the Seller Debtors (the "APA"). The Sale Transaction pursuant to the APA is subject to competitive bidding and approval by the Bankruptcy Court pursuant to section 363 of title 11 of the United States Code and rule 6004 of the Federal Rules of Bankruptcy Procedure.

a. Not less than thirty days prior to the Closing (as defined in the APA), the purchaser of the Seller Debtors' assets approved by the Bankruptcy Court (the "Purchaser") shall provide to the Seller Debtors (i) documentation identifying all Contracts the Purchaser wishes to be assumed by the Seller Debtors and assigned by the Seller Debtors to the Purchaser at the Closing (the "Transferred Contracts"); (ii) documentation identifying all Contracts that the Purchaser may, at a later date, wish to be assigned by the Seller Debtors (the "Designated Contracts"); and (iii) all Contracts that the Purchaser will not be seeking to be assigned by the Seller Debtors (the "Excluded Contracts").

b. At any time between the Closing and the 10th day following the Closing, the Purchaser may re-designate any Designated Contract as either a Transferred Contract or an Excluded Contract.  If the Purchaser does not re-designate any Designated Contract by the 10th day following the Closing, such Designated Contract shall be deemed an Excluded Contract as of such date.  The Seller Debtors agree not to reject any Contract on or before the 10th day following the Closing except for Excluded Contracts.

c. The Seller Debtors shall seek the Court's authority to reject Excluded Contracts.

d. Within five Business Days of receiving documentation from the Purchaser designating a Contract as a Transferred Contract, the Seller Debtors shall serve a notice (the "Assignment Notice") by overnight delivery service on each non-debtor counterparty to such contract that the Seller Debtors intend to assume and assign such contract to the Purchaser.  Such notice shall include the Seller Debtors' calculation of any cure costs related to such contract.

e. Objections, if any, to the proposed cure costs or to the proposed assumption and assignment of a Transferred Contract, including, but not limited to, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, the

Purchaser, must be in writing and filed with the Court and served on the Seller Debtors and the Purchaser so as to be received not later than ten days after receipt of an Assignment Notice.

       f.      Any non-debtor counterparty to a Transferred Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Transferred Contract by the Objection Deadline will be deemed to have consented to such Cure Costs and the assumption and assignment of such Transferred Contract, and such party shall forever be barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Seller Debtors, their estates or the Purchaser.

       h.      If the non-debtor counterparty to a Transferred Contract fails to timely object to the assumption and assignment of a Transferred Contract or the proposed Cure Costs relating thereto by the Objection Deadline, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Transferred Contract shall be deemed to be assumed and assigned to the Purchaser and the proposed Cure Costs related to such Transferred Contract shall be established and approved in all respects, subject to the conditions set forth below.

       i.      The Seller Debtors' decision to assume and assign the Transferred Contracts is subject to Court approval and consummation of the sale of the Seller Debtors' assets to the Purchaser.  Accordingly, the Seller Debtors shall be deemed to have assumed and assigned each of the Transferred Contracts as of the date and effective only upon the Closing Date, and absent such closing, each of the Transferred Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.