## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| JOHNSON MEMORIAL MEDICAL CENTER, INC.,  et al. | Jointly Administered under Case No. 15-20056(ASD) |
| DEBTORS | Re: ECF No. 11 |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO
REPAY CERTAIN EXISTING DEBT, (III) AUTHORIZING THE
DEBTOR TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE
PROTECTION, (V) STIPULATING TO THE VALIDITY, ENFORCEABILITY
AND NON-AVOIDABILITY OF CERTAIN PRE-PETITION LIENS,
AND (VI) GRANTING RELATED RELIEF**

Upon the motion, dated January 14, 2015 (the "Motion"), of Johnson Memorial

Medical Center, Inc., Johnson Memorial Hospital, Inc., The Johnson Evergreen Corporation,

Home & Community Health Services, Inc., Johnson Health Care, Inc., and Johnson Professional

Associates, P.C., as debtors and debtors in possession (collectively, the "Debtors") in the above-

captioned chapter 11 cases (collectively, the "Case"), for interim and final orders under sections

105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United

States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and the Local

Rules of Bankruptcy Practice and Procedures for the United States Bankruptcy Court for the

District of Connecticut (the "Local Bankruptcy Rules"), seeking, *inter alia*:

(a)    authorization for the Debtors to obtain postpetition financing (collectively,
the "Postpetition Financing" or the "DIP Facility") up to a maximum outstanding
principal amount of $7.0 million in accordance with, the Debtor-In-Possession Revolving
Loan and Security Agreement among the Debtors, as borrowers, HFG Healthco-4 LLC
("HF-4") and its assigns, as lender (the "Lender") and Healthcare Finance Group, LLC

("HFG"), as administrative and collateral agent (the "Agent" and together with the Lender, the "Lender Parties"), substantially in the form annexed to the Motion as Exhibit A (the "DIP Loan Agreement"), together with such other documents and agreements required by the Lender Parties including the Participation Agreement (as defined below) (the "DIP Loan Documents").[1]

(b)    authorization for the Debtors to obtain from the Lenders on the Initial Funding Date and from time to time thereafter pending the Final Hearing (as defined below) revolving advances ("Revolving Loans") in amounts not to exceed a maximum outstanding principal amount of $5.0 million (the "Interim Amount") in accordance with the DIP Loan Agreement and the Interim Order, which Interim Amount includes the amount of Existing Revolving Debt (as defined below) being repaid by the Debtors in accordance with the DIP Loan Agreement and the Interim Order;

(c)    authorization for the Debtors to repay immediately the Existing Revolving Debt;

(d)    authorization for the Debtors to obtain from the Lenders upon entry of this Final Order, revolving advances in amounts not to exceed a maximum outstanding principal amount of $7.0 million (the "Total Commitment") in accordance with the DIP Loan Agreement, the DIP Loan Documents and this Final Order which Total Commitment includes the amount of Existing Revolving Debt repaid by the Debtors in accordance with the DIP Loan Agreement and the Interim Order;

(e)    authorization for the Debtors to execute and deliver the DIP Loan Agreement and the DIP Loan Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(f)    approving and authorizing the Participation Agreement among HF-4, HFG and Saint Francis Care, Inc. ("Saint Francis"), substantially in the form annexed to the Motion as Exhibit B (the "Participation Agreement"), pursuant to which Saint Francis has agreed to purchase a last-out participation interest in the Postpetition Financing in order to increase the Debtors' availability thereunder;

(g)    authorization for the Debtors to grant to the Lender Parties assurances for the full and timely payment of the Lender Debt by granting to the Lender Parties (i) pursuant to section 364(c)(1) of the Bankruptcy Code, a superpriority administrative expense claim (a "Superpriority Administrative Expense Claim") having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code; and (ii) pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, liens on, and security interests in, any and all of the Collateral (as defined below), subject only to the Valid Pre-Petition Senior Liens (as defined below);

---

[1]    Capitalized terms not otherwise defined in this Final Order shall have the definitions ascribed to them in the DIP Loan Agreement.

62518291_3

(h)     authorization for the Debtors to use the Prepetition Collateral (as defined below), including the Cash Collateral (as defined below) and approving the grant of adequate protection to the Legacy Creditors (as defined below) as provided herein;

(i)     scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the Interim Order, among other things, authorizing the Debtors, on an interim basis, to borrow the Interim Amount under the Interim Order, the DIP Loan Agreement and the DIP Loan Documents; and

(j)     scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to consider entry of this final order (the "Final Order") authorizing and approving, on a final basis, the Postpetition Financing, and establishing notice procedures in respect of the Final Hearing.

The Debtors having requested in the Motion that pending the Final Hearing on the Motion, a hearing be scheduled on an expedited basis to consider entry of the Interim Order; and the Interim Hearing having been held before the Court on January 15, 2015 following which the Court entered the Interim Order [Docket No. 36] on January 16, 2015; and the Interim Order having scheduled the Final Hearing for February 5, 2015; and notice of the Final Hearing having been given to (a) the U.S. Trustee; (b) counsel to the Existing Lender Parties (as defined below) and the Lender Parties; (c) counsel to Peoples United Bank; (d) counsel to Saint Francis *Care*, Inc.; (e) counsel to Clifford Zucker; (f) counsel to the Pension Benefit Guaranty Corporation; (g) the twenty largest unsecured creditors of each of the Debtors; and (h) any party which filed requests for notices with the Court (collectively, the "Notice Parties"); and it appearing that on the record made in the Case and after considering the Debtors' need for financing, no other or further notice need be given; and the Lender Parties having agreed to provide the Postpetition Financing in accordance with the DIP Loan Agreement, the DIP Loan Documents and this Final Order; and Saint Francis having agreed to purchase a participation interest in the Postpetition Financing in accordance with the Participation Agreement.

3

NOW, THEREFORE, upon the Motion and the record of the Final Hearing held before me on February 5, 2015; and after due deliberation and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law:

Based upon the record presented to the Court, it appears that:

A.    Filing.  On January 14, 2015 (the "Filing Date"), each of the Debtors filed a voluntary petition for reorganization in this Court under chapter 11 of the Bankruptcy Code. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    Debtors' Stipulations.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 25 hereof), the Debtors admit, stipulate and agree that:

1.    Prior to the Filing Date, the Debtors, as borrowers, HF-4 as revolving lender, and HFG, as agent (collectively, in such capacities, the "Existing Lender Parties") entered into that certain Revolving Loan and Security Agreement dated as of September 27, 2010 (as amended, modified and supplemented from time to time, including the schedules and exhibits thereto, the "Existing Loan Agreement") and related agreements, documents and instruments delivered in connection therewith (collectively, together with the Existing Loan Agreement, the "Existing Loan Documents"), pursuant to which, among other things, the Existing Lender made revolving loans and extended other financial accommodations to the Debtors.

2.    Pursuant to the Existing Loan Documents, the Debtors granted the Existing Lender Parties, a first-priority, senior lien on and security interest in certain of the Debtors' assets including, but not limited to, all of the Debtors' receivables, the Debtors' lockbox and lockbox account, the Debtors' cash, the Debtors' payment-related general intangibles and contracts necessary for the collection of receivables, the Debtors' related records and all proceeds of all of the foregoing (collectively, as defined and specified in the Existing Loan Documents as "Collateral", the "Existing Lender Collateral"), to secure the Debtors' obligations under the Existing Loan Documents.  All proceeds of the Existing Lender Collateral (including cash on deposit at depository institutions as of the Filing Date, securities or other property) constitute "cash collateral" of the Existing Lender Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

3.    As of the Filing Date, the Debtors were validly indebted to the Existing Lender Parties under the Existing Loan Documents in the approximate amount of $4.6 million on

account of the revolving loans under the Existing Loan Documents, plus accrued and unpaid interest, fees and expenses including professional fees and expenses incurred under or in connection with the Existing Loan Documents (the "Existing Debt"), and the Debtors do not have any counterclaim, setoff, defense or objection against or relating to the Existing Debt.  No portion of the Existing Debt is subject to avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code (including, but not limited to, section 502(d) thereof) or applicable non-bankruptcy law.  To the best of the Debtors' knowledge and belief, based on the value of the Existing Lender Collateral (which, as of January 14, 2015, has an estimated value of approximately $11 million), the Existing Debt is oversecured as of the Filing Date.

4.       The Debtors are not aware of any facts that would support, nor are they aware of, any claims, causes of action or equitable remedies against or defenses to or abatement of the claims and liens asserted by the Existing Lender Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.

5.       The Existing Debt is fully secured by valid, binding, enforceable and properly perfected first priority liens and security interests in the Existing Lender Collateral, each of which lien is not subject to avoidance, subordination, or disallowance pursuant to the Bankruptcy Code (including, but not limited to, section 502(d) thereof) or applicable non-bankruptcy law.  The Debtors are unaware of any action taken by the Existing Lender Parties which would result in the avoidance, postponement, disallowance, recharacterization or subordination of the Existing Debt.

C.       Need for Postpetition Financing and Use of Prepetition Collateral (including Cash Collateral).  The Debtors have an immediate need to obtain the Postpetition Financing and to use the Existing Lender Collateral as well as the Debtors' other assets which are the subject to the liens of creditors (the "Prepetition Collateral"), including the proceeds thereof (collectively, the "Cash Collateral").  The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Postpetition Financing and the Debtors' use of the Existing Lender Collateral and the Prepetition Collateral (including Cash Collateral).  The ability of the Debtors to pay employees, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' continued viability and to the well-being of the Debtors' patients dependent on the Debtors' healthcare services and is essential to the Debtors'

5

efforts to consummate the contemplated sale of their assets.  Without the Postpetition Financing

and the Debtors' use of the Prepetition Collateral (including Cash Collateral), the continued

orderly operation of the Debtors' healthcare services would not be possible, and serious and

irreparable harm to the Debtors and their estates as well as the community and the patients

dependent on the Debtors' healthcare services would result.  The purpose of the Postpetition

Financing and the Debtors' use of the Prepetition Collateral (including Cash Collateral) will thus

be to preserve, maintain and enhance the going concern value of the Debtors, protect the

community and the patients dependent on the Debtors' healthcare services and facilitate a sale of

the Debtors' assets.

        D.     <u>No Credit Available on More Favorable Terms</u>.  Given the Debtors'

financial condition, financing arrangements, and capital structure, as well as the uncertain timing

of collections of receivables, the Debtors do not have sufficient Cash Collateral to fund their

businesses and are otherwise unable to obtain adequate unsecured credit allowable under section

503(b)(1) of the Bankruptcy Code as an administrative expense.  Financing on a postpetition basis

is not otherwise available without the Debtors' granting, pursuant to section 364(c)(1) of the

Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds

specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness

and obligations with the security interests in and the liens upon the Collateral pursuant to section

364(c) and (d) of the Bankruptcy Code.  The Debtors are unable to obtain the necessary

postpetition financing that they need on terms more favorable than those provided by the

Postpetition Financing.

        E.     <u>Need to Grant Superpriority Administrative Expense Claim and Priming
Liens</u>.  The Debtors are unable to obtain an adequate unsecured credit facility allowable under

section 503(b)(1) of the Bankruptcy Code and must grant to the Lender Parties a Superpriority

Administrative Expense Claim as contemplated by section 364(c)(1) of the Bankruptcy Code and

liens as contemplated by section 364(c)(2), (c)(3) and (d) of the Bankruptcy Code.  The Lender

Parties have conditioned all loans and advances to be made under the DIP Loan Agreement upon

the grant to the Lender Parties of: (a)  a Superpriority Administrative Expense Claim pursuant to

section 364(c)(1) of the Bankruptcy Code with priority over any and all expenses of any kind or

nature whatsoever specified in sections 503(b) and 507(b) of the Bankruptcy Code, other than the

Carveout; and (b) subject to the Valid Pre-Petition Senior Liens and the Carveout, in accordance

with section 364(c)(2), (3) and (d) of the Bankruptcy Code, liens on and security interests in the

Collateral.

       F.      <u>Repayment of Existing Debt</u>.  In accordance with the Interim Order, and

the DIP Loan Agreement, the Debtors repaid the Existing Debt with proceeds of the Postpetition

Financing.  As provided in paragraph 25 hereof, this Final Order preserves the rights of parties in

interest to investigate and, if appropriate, challenge the validity, enforceability, perfection and

priority of the Existing Debt and the Existing Lender Parties' security interests in and liens on the

Existing Lender Collateral, including, without limitation, the repayment of the Existing Debt.

       G.      <u>DIP Facility</u>.  Pursuant to the DIP Facility, the Lender Parties have agreed

to provide Revolving Loans to the Debtors in amounts not to exceed the maximum outstanding

principal amount at any one time of (i) following entry of the Interim Order and prior to entry of

the Final Order, $5.0 million in accordance with the DIP Loan Agreement, the DIP Loan

Documents, the Budget (as defined below) and the Interim Order, and (ii) upon entry of this Final

Order, $7.0 million, in accordance with the DIP Loan Agreement, the DIP Loan Documents, the

Budget and this Final Order.

62518291_3

H.    <u>Participation Agreement</u>.  Pursuant to the Participation Agreement, Saint Francis has agreed to purchase a last-out participation interest in the Postpetition Financing from the Lender Parties in an amount not to exceed $1.2 million.  The Lender Parties have agreed to increase the Debtor's availability under the DIP Facility on account of the participation interest purchased by Saint Francis.  As reflected in the Budget, the Debtors require that additional availability in order to fund their anticipated working capital needs during the pendency of the Case.

I.    <u>Valid Pre-Petition Senior Liens</u>.  The liens securing the DIP Facility shall not prime the Valid Pre-Petition Senior Liens, as defined in the DIP Loan Agreement and set forth on Schedule VII of the DIP Loan Agreement (only with respect to the assets set forth therein).  The liens securing the Lender Debt in the Receivables Collateral are not subject to any Valid Pre-Petition Senior Liens and shall be first-priority, senior liens, consistent with the lien priority securing the Existing Debt as of the Petition Date.  Any liens (including liens securing Other Debt Obligations) in the Receivables Collateral shall be junior in priority to the liens securing the Lender Debt.

J.    <u>Business Judgment and Good Faith</u>.  The terms of the Postpetition Financing are at least as favorable to the Debtors as those available from alternative sources.  The terms of the Postpetition Financing have been negotiated in good faith and at arm's length between the Debtors and the Lender Parties, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are fair and reasonable under the circumstances, and are enforceable in accordance with applicable law.  The credit extended to the Debtors by the Lender Parties under the Postpetition Financing and this Final Order shall be deemed to have been extended in "good faith" as that term is used in section 364(e) of the

8

Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

K.      <u>Need for Approval</u>.  The Debtors have no alternative source of financing to meet their immediate and projected obligations, including payroll and other operating expenses, and consequently, it is essential that the Court approve the Postpetition Financing. Consummation of the Postpetition Financing and authorization of the use of the Prepetition Collateral (including Cash Collateral) in accordance with the terms of this Final Order are therefore in the best interests of the Debtors' estates, and are consistent with the Debtors' exercise of their fiduciary duties.

L.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This Final Order is entered in a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K) and (M).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

M.      <u>Notice</u>.  Notice of the Final Hearing was provided in accordance with the Interim Order, constitutes appropriate, due and sufficient notice thereof, and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

Based upon the foregoing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

62518291_3

**Approval and Authorization.**

1.      <u>Motion Granted</u>.   The Motion is granted.   Any objections that have not been previously withdrawn, waived or settled or otherwise addressed in the terms of this Final DIP Order, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Approval of Documents</u>.   The Postpetition Financing, the DIP Loan Agreement and the DIP Loan Documents (including, without limitation, the Participation Agreement) are hereby approved subject to the terms of this Final Order.   The failure to reference or discuss any particular provision of the DIP Loan Agreement or any DIP Loan Document shall not affect the validity or enforceability of any such provision.

3.      <u>Authorization to Execute and Deliver Documents</u>.   The Debtors are expressly authorized, empowered and directed to do and perform all acts to make, execute, deliver and implement the DIP Loan Agreement and the DIP Loan Documents, and any other document required to be executed and delivered in connection therewith.   Upon execution and delivery of the DIP Loan Agreement and the DIP Loan Documents, the DIP Loan Agreement and the DIP Loan Documents shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms thereof and of this Final Order.   No obligation, payment, transfer or grant of security under the DIP Loan Agreement and the DIP Loan Documents, or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.   The Debtors are authorized and directed to pay all principal, interest, fees, costs and other expenses that may be required or necessary for the Debtors to perform all of their

62518291_3

obligations under the DIP Loan Agreement, the DIP Loan Agreement, the DIP Loan Documents and this Final Order without any further order or approval of the Court.

4.      <u>Authorization to Borrow; the Budget</u>.   Good and sufficient cause has been shown for the entry of this Final Order.  The Debtors are authorized and empowered to borrow funds pursuant to the DIP Loan Agreement and the DIP Loan Documents for the purposes permitted under the DIP Loan Agreement and the DIP Loan Documents and this Final Order, all in accordance with the budget attached to the Motion as <u>Exhibit C</u> (the "<u>Budget</u>").

5.      <u>Amendments</u>.    The Lender Parties and the Debtors may amend, modify, supplement or waive any provision of the DIP Loan Agreement and the DIP Loan Documents if such amendment, modification, supplement or waiver is not material (in the good faith judgment of the Lender Parties and the Debtors), without any need to apply to, or receive further approval from, the Court.   Any material amendment, modification, supplement or waiver shall be in writing, signed by the parties and subject to approval by the Court on appropriate notice.

**Repayment of Existing Debt.**

6.      <u>Repayment of Existing Debt.</u>   Subject to the effects of a Challenging Action as defined and described in paragraph 25 hereof, on the Initial Funding Date, the Debtors borrowed under the DIP Facility an amount sufficient to repay the Existing Debt and repaid the Existing Debt in full.

**Use of Prepetition Collateral (Including Cash Collateral).**

7.      <u>Use of Prepetition Collateral (Including Cash Collateral)</u>.   The Debtors are authorized to use the Prepetition Collateral (including the Cash Collateral) during the period from the Filing Date until the occurrence and continuation of an Event of Default for the same purposes as set forth in and in accordance with this Final Order, the DIP Loan Agreement, the DIP Loan Documents and the Budget.

**Payment of Lender Debt.**

8.      Payment of Principal, Interest, Fees, Etc.   The Debtors shall pay to the Lender Parties principal and interest as provided in this Final Order, the DIP Loan Agreement and the DIP Loan Documents in accordance with the procedures herein and therein set forth (and the Lender Parties shall be permitted to charge such amounts to the DIP Facility).   In consideration of the financial and other accommodations to be made by the Lender Parties under this Final Order, the DIP Loan Agreement and the DIP Loan Documents, the Debtors are hereby authorized and directed, without further order of the Court, to pay to the Lender Parties all fees and charges as set forth herein and in the DIP Loan Agreement and the DIP Loan Documents and to reimburse the Lender Parties for all reasonable out of pocket expenses and professional fees and related disbursements incurred by the Lender Parties in connection with the preparation of the DIP Loan Agreement and the DIP Loan Documents or in connection with or related to the Debtors, the Case or the DIP Facility; *provided* that the Lender Parties shall provide a copy of any invoices (redacted with respect to privileged matters) for their professional fees and expenses to counsel for the Debtors and the Office of United States Trustee, and in absence of an objection filed with this Court within 10 days after receipt of such invoices, the Debtors are authorized and directed to pay the amount of such invoices.   In the event there is an objection filed with this Court within 10 days after receipt of such invoices, the Debtors are authorized and directed to pay only the portion of such invoices that are not subject to such objection, and shall pay any balance following resolution of such objection or upon an order of this Court.

62518291_3

## Superpriority Administrative Claim; Collateral.

9.      Superpriority Administrative Expense Claim; Waiver under Section 506(c).  All
of the Lender Debt shall have the status of an allowed Superpriority Administrative Expense
Claim in the Case pursuant to section 364(c)(1) of the Bankruptcy Code, having priority over
any and all administrative expenses, adequate protection claims and all other claims against the
Debtors, whether heretofore or hereafter incurred, of any kind or nature whatsoever, other than
the Carveout, including without limitation, all administrative expenses of the kind specified in
sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative
expenses or other claims arising under sections 326, 328, 330, 331, 503(b), 506(c), 507(a),
507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims
may become secured by a judgment lien or other non-consensual lien, levy or attachment, which
allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be
considered administrative expenses allowed under section 503(b) of the Bankruptcy Code.
Other than the Carveout, no claim or expense having a priority senior or *pari passu* to the
priority granted to the Lender Parties in this Final Order shall be granted or permitted in the
Case, or any superseding chapter 7 case, and no other costs or expenses of administration of any
kind, nature or description whatsoever shall be imposed against the Collateral under sections
105, 506(c) or 552 of the Bankruptcy Code or otherwise, in each case, while any portion of the
Lender Debt remains outstanding.  For avoidance of doubt, the only limitation on the Court's
authority under section 105 of the Bankruptcy Code set forth in this Final DIP Order is as set
forth in this Paragraph 9 and Paragraph 19 hereof.

10.      Payment of Administrative Expenses.  Unless an Event of Default shall have
occurred (or would result from such payment), subject to the Budget, the Debtors shall be
permitted to pay, as the same may become due or authorized and payable, administrative

expenses of the kind specified in section 503(b) of the Bankruptcy Code incurred in the ordinary course of their businesses.

11.    <u>Collateral Security</u>.  As security for the full and timely payment of the Lender Debt, the Lender Parties are hereby granted pursuant to section 364(c)(2), (3) and (d) of the Bankruptcy Code, liens on, and security interests in, all of the Collateral, subject only to the Valid Pre-Petition Senior Liens and the Carveout.   The term "<u>Collateral</u>" shall have the definition ascribed thereto in the DIP Loan Agreement and includes all of the Debtors' assets including, without limitation, whether now existing or owned or hereafter arising or acquired, all receivables, all general intangibles and payment intangibles, contract rights, deposits and deposit accounts, goods, inventory, machinery and equipment, goodwill and investment property, membership rights, privileges and interests in any person, and all cash and non-cash proceeds of the foregoing.   The term "<u>Collateral</u>" shall also include any and all causes of action of the Debtors and their estate under sections 544, 545, 547, 548, 549, 550 and 724 of the Bankruptcy Code and any proceeds thereof ("<u>Avoidance Actions</u>").

12.    <u>No Subordination</u>.  The liens on, and security interests in, the Collateral granted to the Lender Parties under this Final Order and pursuant to the DIP Loan Agreement and the DIP Loan Documents shall not be subordinated to, or made *pari passu* with, any other lien or security interest, however and whenever arising, in the Case or any superseding chapter 7 case, other than the Valid Pre-Petition Senior Liens.

13.    <u>Automatic Perfection of Liens</u>.

(a)    The liens and security interests granted to the Lender Parties hereunder and under the Interim Order, the DIP Loan Agreement and the DIP Loan Documents are valid, binding, continuing, enforceable and fully-perfected with the priorities herein and therein set forth.

(b)    The Lender Parties shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the liens and security interests granted by or pursuant to the Interim Order, this Final Order, the DIP Loan Agreement and the DIP Loan Documents.

(c)    Should the Lender Parties, in their sole discretion, from time to time, choose to file such financing statements, mortgages, notices of lien or similar instruments, take possession of any Collateral securing the Lender Debt for perfection purposes, or take any other action to protect from infringement or otherwise validate or perfect any such security interest or lien, the Debtors and their officers are hereby directed to execute any such documents or instruments as the Lender Parties shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order.

(d)    In the discretion of the Lender Parties, a certified copy of this Final Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby directed to accept such certified copy of this Final Order for filing and recording, and

such certified copy shall be deemed filed and recorded at the time and on the date of entry of the Interim Order.

(e)<strong><u>Carveout</u></strong>

14.     Notwithstanding anything to the contrary herein, the liens, security interests, and Superpriority Administrative Expense Claims granted in favor of the Lender Parties in connection with the DIP Facility and granted herein in favor of the Legacy Creditors as adequate protection shall be subject to a carveout (the "<u>Carveout</u>") for the payment of all unpaid fees payable to the U.S. Trustee under 28 U.S.C. § 1930 in such amounts as determined in agreement with the U.S. Trustee or by a final order of the Court.

**Termination; Maturity Date.**

15.    <u>Termination</u>.  Subject to any applicable grace or cure period expressly set forth in the DIP Loan Agreement or the DIP Loan Documents, in the event of (a) the failure of the Debtors to perform any of their material obligations under this Final Order, or (b) the occurrence and continuance of an Event of Default, then and upon the occurrence of either of the foregoing (each a "<u>Termination Event</u>"), and at all times during the continuance thereof, the Lender Parties may file an emergency motion requesting relief from the automatic stay to exercise any and all rights and remedies allowed under this Final Order, the DIP Loan Agreement, the DIP Loan Documents and/or applicable law and the Court shall accommodate a hearing, to the extent reasonably feasible, no later than three (3) business days of the filing of such motion; *provided*, *however*, that notwithstanding the foregoing and section 362 of the Bankruptcy Code, and without order of or application or motion to the Court, if a Termination Event exists, the Lender Parties may do one or more of the following at any time and in any order:  (i) reduce the amount of the Borrowing Base used in computing availability under the DIP Facility, (ii) restrict the amount of or refuse to make revolving loans or advances under the DIP Facility or terminate or reduce the Lender Parties' commitment to lend under the DIP Facility, (iii) continue to apply collections on receivables and other Collateral to the Lender Debt, and/or (iv) declare the Lender Debt to be immediately due and payable.  The Lender Parties' failure to exercise rights under this paragraph shall not constitute a waiver of any of their rights.  At any hearing following a Termination Event, the Debtors shall be permitted to contest whether a Termination Event has occurred and is then continuing but may not seek any relief that would in any way restrict or impair the rights and remedies of the Lender Parties set forth in this Final Order, the DIP Loan Agreement, the DIP Loan Documents and/or applicable law.

16.   <u>Maturity Date</u>.  In addition to any rights and remedies of the Lender Parties under the terms of this Final Order, the DIP Facility shall immediately and automatically terminate and the Lender Debt shall be immediately due and payable upon the Maturity Date.

**<u>Adequate Protection for the Legacy Creditors.</u>**

17.   <u>Adequate Protection Liens</u>.  As adequate protection for the granting of liens to secure the DIP Facility and the Debtors' use of the Prepetition Collateral including the Cash Collateral, to the extent of any diminution in value (if any) of the liens (if any) of Clifford Zucker, as "Plan Custodian" and the Pension Benefit Guaranty Corporation (collectively, the "<u>Legacy Creditors</u>") in the Collateral following the Filing Date, the Legacy Creditors are granted replacement liens (the "<u>Adequate Protection Liens</u>") in all Collateral.  The Adequate Protection Liens shall be junior in priority to the Valid Pre-Petition Senior Liens and the liens of the Lender Parties securing the Lender Debt.

18.   <u>No Filing Required</u>.  The Legacy Creditors shall not be required to file any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or filing office, or to take any other action in order to validate or perfect the Adequate Protection Liens granted by or pursuant to this Final Order.  The Legacy Creditors shall have no right to seek or exercise any rights or remedies in respect of the Adequate Protection Liens unless the Lender Parties have consented thereto or the Lender Debt has been indefeasibly paid and satisfied in full accordance with the DIP Loan Agreement, the DIP Loan Documents and this Final Order.

19.   <u>Superpriority Administrative Expense Claim; Waiver under Section 506(c)</u>.  In accordance with section 507(b) of the Bankruptcy Code, the amount of any diminution in value (if any) of the Legacy Creditors' liens in the Collateral following the Filing Date shall have the status of an allowed Superpriority Administrative Expense Claim in the Cases pursuant to

section 364(c)(1) of the Bankruptcy Code, having priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, whether heretofore or hereafter incurred, of any kind or nature whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, subject and junior only to the Lender Parties' Superpriority Administrative Expense Claim.

### **Miscellaneous Provisions.**

20.    <u>Reporting Requirements</u>.  The Debtors are obligated to allow access to the Lender Parties and their representatives and to provide information with respect to and otherwise comply with the reporting and disclosure undertakings and agreements set forth in this Final Order and the DIP Loan Agreement and the DIP Loan Documents and such obligations shall continue until the indefeasible payment in full of all Lender Debt and the Lender Parties' commitment to loan money to the Debtors under the DIP Loan Agreement is terminated.

21.    <u>Collection and Deposit Accounts</u>.  In accordance with the Bankruptcy Court's Order granting the Debtors' motion to maintain their cash management system, People's United Bank shall continue to comply with its obligations under the collection account agreements and deposit account control agreements among People's United Bank, the respective Debtor, and the Existing Lender Parties and shall transfer all collections and proceeds of accounts receivable deposited in the accounts governed by such agreements in accordance with the terms of such

20

agreements to the Agent, in accordance with the written instructions provided by the Agent to

People's United Bank.

22.     <u>Binding Effect of Order; Successors and Assigns</u>.  The DIP Loan Agreement, the

DIP Loan Documents and this Final Order shall be binding upon all parties-in-interests in the

Case, including without limitation, the Lender Parties, the Existing Lender Parties, and the

Debtors and their respective successors and assigns, including, without limitation, any chapter 11

trustee or chapter 7 trustee or similar responsible person hereafter appointed as a representative

of the Debtors' estates and any such successors or assigns, without further order of this Court

and shall inure to the benefit of the Lender Parties, the Existing Lender Parties, and the Debtors

and their respective successors and assigns.  The Debtors and their successors and assigns shall

be deemed authorized and directed to comply with the provisions of this Final Order, the DIP

Loan Agreement and the DIP Loan Documents.   The Lender Parties shall not have any

obligation to extend any financing to any chapter 11 trustee or chapter 7 trustee or similar

responsible person appointed for the estates of the Debtors.

23.     <u>No Impairment of Liens and Order</u>.  The liens, security interests, Superpriority

Administrative Expense Claims, Lender Debt and other rights and remedies granted to the

Lender Parties under this Final Order, the Interim Order, the DIP Loan Agreement and the DIP

Loan Documents, and any actions taken pursuant hereto or thereto shall survive, and shall not be

modified, altered or impaired in any manner by (a) any other financing or extension of credit or

incurrence of debt by the Debtors (under section 364 of the Bankruptcy Code or otherwise),

(b) the entry of an order confirming any plan of reorganization, (c) the entry of an order

converting the Case to chapter 7 or dismissing the Case, or (d) the maturity of the Lender Debt.

The liens, security interests, claims and any other rights granted to the Lender Parties pursuant to

62518291_3

this Final Order and the Interim Order, the DIP Loan Agreement and the DIP Loan Documents shall continue in effect until the Lender Debt is indefeasibly satisfied and paid, and the Lender Parties' commitment to make loans under the DIP Facility has terminated.

24.     <u>Good Faith</u>.  Having been found to be extending the Postpetition Financing to the Debtors in good faith, the Lender Parties are entitled to the full protection of section 364(e) of the Bankruptcy Code with respect to the Lender Debt and the Superpriority Administrative Expense Claims and liens created or authorized by this Final Order in the event that this Final Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. If any provision of this Final Order is hereafter modified, vacated, reversed or stayed by subsequent order of this or any other court for any reason, such modification, vacation, reversal or stay shall not affect the validity, enforceability and priority of any of the Lender Debt or the claims, liens and security interests granted to the Lender Parties under this Final Order, the DIP Loan Agreement and/or the DIP Loan Documents, and the validity, enforceability or priority of the Lender Debt and the claims, liens and security interests of the Lender Parties shall be governed in all respects by the original provisions of this Final Order, and the Lender Parties shall be entitled to all of the rights, privileges and benefits granted herein, including, without limitation, the liens, security interests and priorities granted to the Lender Parties in this Final Order with respect to all Lender Debt.

25.     <u>Challenges in Respect of Existing Debt</u>.  The Debtors agreed to waive the right to challenge the validity, enforceability, perfection and priority of the Existing Debt and the Existing Lender Parties' security interest and liens on the Existing Lender Collateral.  Each other party, including any committee or trustee appointed in the Case, shall have waived any right to challenge the validity, enforceability, perfection and priority of the Existing Debt and the

Existing Lender Parties' security interest and liens on the Existing Lender Collateral, unless that party commences in the Court an adversary proceeding challenging such validity, enforceability, perfection and/or priority (a "Challenging Action") on or before (a) for all parties in interest other than any official committee of unsecured creditors, 75 days after the entry of the Interim Order and (b) for the official committee of unsecured creditors, if appointed, the earlier of (i) 60 days after the appointment of such committee and (ii) May 15, 2015 (collectively, the "Challenge Deadline").  The Existing Debt and the Existing Lender Parties' security interest and liens on the Existing Lender Collateral shall be deemed, as against any party in interest that does not file a Challenging Action on or before the Challenge Deadline, to be legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable.  If no Challenging Action is commenced on or before the Challenge Deadline or, in the event one or more Challenging Actions is commenced on or before the Challenge Deadline and such Challenging Actions are dismissed, then the Existing Debt and the Existing Lender Parties' security interest and liens on the Existing Lender Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates or otherwise, including without limitation, any successor thereto.  None of the advances under the DIP Facility may be used to prosecute actions, claims, demands or causes of action against the Lender Parties or the Existing Lender Parties or to object to or contest in any manner, or to raise any defense in any pleading to the validity, perfection, priority or enforceability of the Existing Debt or the Existing Lender Parties' liens and security interests in the Existing Lender Collateral, the liens and security interests granted to the Lender Parties hereunder, or the Lender Debt, including in respect of a Challenging Action.

26.     <u>No Third Party Beneficiaries</u>.  Other than as expressly set forth herein, no rights are created hereunder for the benefit of any third party, or any direct, indirect or incidental beneficiary.

27.     <u>No Marshaling</u>.  In no event shall the Lender Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

28.     <u>Limitations under Section 552(b) of the Bankruptcy Code</u>.  The Lender Parties and the Existing Lender Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and no expenses of administration of the Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the Collateral under section 552(b) of the Bankruptcy Code.

29.     <u>No Waiver</u>.  Any Lender Party's delay or failure to exercise rights and remedies under the DIP Loan Agreement, the DIP Loan Documents or this Final Order shall not constitute a waiver of the Lender Party's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Loan Agreement, the DIP Loan Documents and this Final Order.

30.     <u>Payments Free and Clear</u>.  Subject to paragraph 25 hereof, any and all payments or proceeds remitted to the Lender Parties or the Existing Lender Parties pursuant to the provisions of this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

62518291_3

31.    <u>Insurance</u>.  The Lender Parties are deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies to the payment in full of the Lender Debt, subject as applicable to the Valid Pre-Petition Senior Liens.

32.    <u>Automatic Stay</u>.  The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Lender Parties to take any action authorized or contemplated by this Final Order or the DIP Loan Agreement, the DIP Loan Documents and to carry out the terms thereof, subject, however, to the satisfaction of any notice, procedural and other conditions contained in this Final Order, and/or the DIP Loan Agreement or the DIP Loan Documents.

33.    <u>No Control</u>.  By consenting to the Interim Order and this Final Order, by making advances, loans or extending financial accommodations of any type, kind or nature under the Interim Order or the Final Order or by administering the loans made hereunder, none of the Lender Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtors.

34.    <u>Indemnification</u>.  Nothing in this Final Order, the DIP Loan Agreement or the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Lender Parties or the Existing Lender Parties, any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  So long as the Lender Parties and

the Existing Lender Parties comply with their respective obligations under this Final Order, the

DIP Loan Agreement and the DIP Loan Documents and their obligations under applicable law

(including the Bankruptcy Code), (a) the Lender Parties and the Existing Lender Parties shall

not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral,

(ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause,

(iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee,

custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of

the Collateral shall be borne by the Debtors.

35.    <u>Inconsistency</u>.  In the event of any inconsistency between this Final Order and the

DIP Loan Agreement, the DIP Loan Documents, the Existing Loan Agreement, any document or

any other agreement heretofore or hereafter entered into by and between the Debtors and the

Lender Parties and/or the Existing Lender Parties, the terms of this Final Order shall govern and

control.

36.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction to

enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the

confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the

terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11

plan.

37.    <u>Immediate Docketing of Order</u>.  The Clerk of the Court is hereby directed to

forthwith enter this Final Order on the docket of this Court maintained in regard to the Cases.

38.    <u>Effectiveness</u>.  In accordance with Rule 7052, this Final Order shall constitute

findings of fact and conclusions of law and shall take effect and be fully enforceable

immediately upon entry hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h),

6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of

the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final

Order.

39.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to

affect the construction of or to be taken into consideration in interpreting this Final Order.

40.    <u>Amendment to DIP Loan Agreement</u>.    Section 8.18(b)(2) of the DIP Loan

Agreement shall be deemed amended with the two references to "150 days" in such section

being amended to "225 days".

41.    <u>Rights of DSS and HHS</u>

(a)    Nothing contained in this Final DIP Order shall operate as a waiver,

limitation, subordination or release of any right that the State of Connecticut Department of

Social Services ("<u>DSS</u>"), or any agent, carrier, administrator or intermediary of DSS to make a

reduction or otherwise withhold from any account receivables arising from services provided by

Debtors through recoupment, setoff under Section 553 of the Bankruptcy Code or otherwise any

amounts due to DSS under State law, Medicaid provider agreements and other agreements

between the Debtors and DSS, and all rights of DSS in such regard are fully reserved.

(b)    Nothing contained in this Final DIP Order shall operate as a waiver,

limitation, subordination or release of any right that the United States Department of Health and

Human Services ("<u>HHS</u>"), or any agent, carrier, administrator or intermediary of HHS to make a

reduction or otherwise withhold from any account receivables arising from services provided by

Debtors through recoupment, setoff under Section 553 of the Bankruptcy Code or otherwise any

amounts due to HHS under federal law, Medicare provider agreements and other agreements

between the Debtors and HHS, and all rights of HHS in such regard are fully reserved.

Dated: February 11, 2015                                  BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge

Hearing Held 2/5/2015

62518291_3