# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

_____
                                       )
In Re:                                 )    Chapter 11
                                       )
JOHNSON MEMORIAL                       )    Jointly Administered
MEDICAL CENTER, INC., et al.,[1]       )    Case No. 15-20056
                                       )
        Debtors.                       )
_____ )
                                       )
JOHNSON MEMORIAL MEDICAL               )
CENTER, INC., JOHNSON MEMORIAL         )
HOSPITAL, INC., HOME &                 )
COMMUNITY HEALTH SERVICES,             )
INC., and JOHNSON HEALTH CARE,         )
INC.,                                  )
                                       )
        Movants,                       )
                                       )
vs.                                    )
                                       )
PEOPLE'S UNITED BANK,                  )    Re: ECF Nos. 196, 210 and 223
THE PENSION BENEFIT GUARANTY           )
CORPORATION,                           )
CLIFFORD A. ZUCKER, and                )
DR. RENEE PRINCE,                      )
                                       )
        Respondents.                   )
_____ )

**ORDER AUTHORIZING AND APPROVING (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO SAINT FRANCIS *CARE*, INC., (II) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF REAL PROPERTY PURSUANT TO PROCEDURES PROVIDED FOR HEREIN, AND (III) RELATED RELIEF[2]**

---

[1] Johnson Memorial Medical Center, Inc., Case No. 15-20056, Johnson Memorial Hospital, Inc., Case No. 15-20057, Home & Community Health Services, Inc., Case No. 15-20060, Johnson Health Care, Inc., Case No. 15-20061, The Johnson Evergreen Corporation, Inc., Case No. 15-20062, Johnson Professional Associates, P.C., 15-20063.

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

22900.037/625516.1

Upon the motion (the "<u>Motion</u>")³ of Johnson Memorial Medical Center, Inc. ("<u>JMMC</u>"), Johnson Memorial Hospital, Inc. ("<u>JMH</u>"), Johnson Health Care, Inc. ("<u>JHC</u>"), and Home and Community Health Services, Inc. ("<u>HCHS</u>"; together with JMMC, JMH and JHC, the "<u>Debtors</u>"), pursuant to Bankruptcy Code sections 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and 9014, for entry of an order authorizing and approving, among other things, the sale of all or substantially all of the Debtors' assets, real and personal, tangible and intangible, associated with owning, leasing, managing and operating the Facilities (as more specifically described in the APA, the "<u>Purchased Assets</u>") to Saint Francis *Care*, Inc. or its designee(s) (collectively, "<u>SFC</u>") free and clear of all Claims and Encumbrances (as defined below), assumption and assignment of executory contracts and unexpired leases of real property pursuant to procedures specified in the Motion, and related relief; and it appearing that due and appropriate notice of the Motion and the hearing on the Motion (the "<u>Sale Hearing</u>") was given; and it appearing that no other notice of the relief granted by this Order need be given; and the Court having conducted the Sale Hearing, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the Sale Transaction (as such term is defined in the Motion) and the APA (as such term is defined in the Motion); and this Court being fully advised in the premises; this Court, based upon the arguments, testimony and evidence presented to it, hereby makes the following findings of fact and conclusions of law:

---

³ Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or that certain Asset Purchase Agreement by and between the Debtors, as sellers, and SFC, as buyer (the "<u>APA</u>").

-2-

A.  This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.  This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.  The statutory predicates for the Motion are sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007 and 9014.

E.  As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely and adequate notice of the Motion, the Sale Hearing, and the Sale Transaction as approved herein has been provided in accordance with Bankruptcy Rules 2002, 6004, 9007 and 9014, (ii) such notice was good, sufficient and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Sale Transaction as provided herein is necessary or shall be required.

F.  A reasonable opportunity to object or be heard with respect to the Motion and the Sale Transaction has been afforded to all interested persons and entities, including, without limitation: (i) the office of the United States Trustee, (ii) all creditors as defined in Section 101(1) of the Bankruptcy Code, (iii) all entities known to have asserted any lien, interest or encumbrance upon the Debtors' assets, (iv) counsel for SFC, (v) counsel for the Official Committee of Unsecured Creditors, if any, (vi) counsel to the Debtors' prepetition secured lenders, (vii) the United States Attorney's Office, (viii) the United States Department of Justice, (ix) the Internal Revenue Service, (x) the Pension Benefit Guaranty Corporation; (xi) appropriate state regulatory agencies, including, without limitation, the Connecticut Department of Energy & Environmental Protection, the Connecticut Attorney General's Office, and the Connecticut Department of Revenue Services; (xii) any other persons known by the Debtor to hold, assert or have threatened to assert claims against the Debtor, including, without limitation, any malpractice or tort claims, (xiii) Healthcare Finance Group, LLC, and (xiv) all other parties who filed requests for notice under Bankruptcy Rule 2002 in these cases.

G.  Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service filed with the Court has been provided and such notice is reasonable and adequate.

H.  The Debtors have articulated good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the relief requested in the Motion, including approval of (i) the APA, (ii) the Break-Up Fee and Expense Reimbursement, as provided for in the APA, (iii) the procedures for the cure, assumption and assignment of executory contracts and unexpired leases, and (iv) relief related thereto.

-3-

22900.037/625516.1

   I. The Break-Up Fee and Expense Reimbursement to be paid under the circumstances described in the APA are (i) actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of Bankruptcy Code section 503(b), (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Buyer's entry into the APA, and (iii) reasonable and appropriate in light of the size and nature of the proposed Sale Transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Buyer.

   J. Moreover, the Break-Up Fee and Expense Reimbursement are essential inducements and conditions relating to the Buyer's entry into, and continuing obligations under, the APA. Unless it is assured that the Break-Up Fee and Expense Reimbursement will be available as provided in the APA, the Buyer is unwilling to enter into or otherwise be bound under the APA. Accordingly, the Break-Up Fee and Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

   K. The Debtors have demonstrated a compelling and sound business justification for authorizing the payment of the Break-Up Fee and Expense Reimbursement under the circumstances, timing and procedures set forth in the Motion.

   L. The Debtors have provided support for their decision to authorize the payment of the Break-up Fee and Expense Reimbursement sufficient to satisfy all conditions set forth in the Bankruptcy Rules and the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Connecticut.

   M. SFC is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.

   N. The APA was negotiated, proposed and entered into by the Debtors and SFC without collusion, in good faith and from arms'-length bargaining positions. Neither the Debtors nor SFC have engaged in any conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the APA to be avoidable under section 363(n) of the Bankruptcy Code.

   O. SFC is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

   P. The consideration provided by SFC for the Purchased Assets pursuant to the APA (i) is fair and reasonable, (ii) will provide a greater recovery for all of the Debtors' stakeholders than would be provided by any other practical available alternative and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

   Q. The Debtors have demonstrated a sufficient basis and compelling circumstances requiring the Debtors to enter into the APA and sell the Purchased Assets under section 363 of

-4-

the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and are in the best interests of the Debtors, their estates and their creditors.

R.  The Debtors have full authority and power to execute and deliver the APA and related agreements and all other documents contemplated by the APA, to perform their obligations therein and to consummate the Sale Transaction.  Except as set forth in the APA, no additional consents or approvals are necessary or required for the Debtors to enter into the APA, perform their obligations therein and consummate the Sale Transaction.

S.  SFC would not have entered into the APA and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their patients, the Debtors' estate and the Debtors' creditors, if the Purchased Assets were not sold to it free and clear of all Claims and Encumbrances or if SFC would, or in the future could, be liable for any Claims and Encumbrances against the Purchased Assets, except as specifically provided in the APA.

T.  Not selling the Purchased Assets free and clear of any and all Liens (other than Permitted Liens), claims (as defined in section 101(5) of the Bankruptcy Code), security interests, mortgages, encumbrances, obligations, including employee benefit obligations (including, without limitation, under the Employee Retirement Income Security Act or the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), and further including any obligations to former employees of the Debtors under COBRA), Liabilities (other than Assumed Liabilities), including liabilities under CERCLA and all other Environmental Laws, charges against or interests in property, adverse claims, claims of possession, rights of way, licenses, easements or restrictions of any kind, demands, guarantees, actions, causes of actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, remedies, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, any rights or claims based on theories of transferee or successor liability under applicable law, statute, rule, regulation, common law or equitable principle, including, without limitation, any Environmental Laws, labor or employment laws (such as unemployment compensation), ERISA, the Code, and COBRA, of any Governmental Entity, including, without limitation, the Pension Benefit Guaranty Corporation, the IRS, state and local taxing authorities and any Governmental Entity, whether arising before or after the commencement of the Bankruptcy Case and whether imposed by agreement, understanding, law, equity, regulation, custom or otherwise, including, without limitation, the Benefit Plans (as such term is defined in the APA), save and excepting only those Liabilities expressly assumed by SFC in writing pursuant to the APA, subject to applicable law, including section 363 of the Bankruptcy Code (collectively, the "Claims and Encumbrances") would adversely impact the Debtors' estate, and the sale of the Purchased Assets other than as free and clear of all Claims and Encumbrances would be of substantially less value to the Debtors' estate.

U.  The provisions of section 363(f) of the Bankruptcy Code have been satisfied.  All holders of Claims and Encumbrances, if any, who did not object, or withdrew their objections to the Sale Transaction, are deemed to have consented to the Sale Transaction.

22900.037/625516.1

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1. The relief requested in the Motion is granted and approved in all respects, as set forth herein. The Debtors' entry into the APA and the Sale Transaction is hereby approved in all respects. Objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2. The Debtors are authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction in accordance with the Motion, the APA and this Order, and (b) perform, consummate, implement and close fully the Sale Transaction, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA including, without limitation, consenting to the assignment by SFC of any of its rights under or relating to the APA.

3. Those holders of Claims and Encumbrances and other non-Debtor parties who did not object, or who withdrew their objections to entry of this Order, the Motion, the Sale Hearing, the Sale Transaction and the APA are deemed to have consented to this Order, the Sale Transaction and the APA pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against SFC, its successors, its assigns, its representatives, its affiliates, its properties, or any agent of the foregoing to recover any claim which such person or entity has against the Debtors or any of their affiliates or any of the Debtors' property. Those holders of Claims and Encumbrances and other non-Debtor parties who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims and Encumbrances, if any, attach to the proceeds of the Sale

Transaction ultimately attributable to the property against or in which they assert a Claim or Encumbrance.

Sale and Transfer of the Purchased Assets

4. Upon Closing, the Purchased Assets transferred, sold and delivered to SFC shall be free and clear of all Claims and Encumbrances of any person or entity, except as specifically provided in the APA, including, without limitation, as specifically provided for with respect to the HFG Debt, the People's Debt, and the Restructured Legacy Creditor Debt. The transfer of the Purchased Assets to SFC constitutes a legal, valid and effective transfer of the Purchased Assets and shall vest SFC with all right, title and interest in and to the Purchased Assets.

5. Upon closing of the Sale Transaction, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Purchased Assets pursuant to the terms of the APA.

6. Effective on the Closing, all entities, including, but not limited to, the Debtors, creditors, employees, former employees and shareholders, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, and their respective successors or assigns, including, but not limited to, persons asserting any Claim or Encumbrance against each Debtors' assets, shall be permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Purchased Assets or SFC (or its successors, assigns, agents or representatives) as alleged successor or otherwise with respect to any Claims and Encumbrances on or in respect of the Purchased Assets, except as specifically provided in the APA, including, without limitation, as specifically provided for with respect to the HFG Debt, the People's Debt, and the Restructured Legacy Creditor Debt.

7. Each and every term and provision of the APA, together with the terms and provisions of this Order, shall be binding in all respects upon all entities, including, but not limited to the Debtors, SFC, creditors, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including but not limited to persons asserting any Claim or Encumbrance against or interest in the Debtors' estate or the Debtors' assets, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

8. Upon the Closing, all entities holding Claims and Encumbrances of any kind and nature against the Debtors' assets hereby are barred from asserting such Claims and Encumbrances against SFC (or its successors, assigns, agents or representatives) and/or the Purchased Assets and, effective upon the transfer of the Purchased Assets to SFC upon Closing, the Claims and Encumbrances shall attach to the proceeds of the Sale Transaction with the same force, validity, priority and effect, if any, as against the Debtors' assets, except as specifically provided in the APA, including, without limitation, as specifically provided for with respect to the HFG Debt, the People's Debt, and the Restructured Legacy Creditor Debt.

9. The APA and the Sale Transaction may be specifically enforced and are binding upon, and not subject to rejection or avoidance by, the Debtors or any Chapter 7 or Chapter 11 trustee of the Debtors appointed pursuant to the Bankruptcy Code or other representative or their estates.

10. This Order (a) is and shall be effective as a determination that, upon Closing, all Claims and Encumbrances existing as to the Debtors' assets conveyed to SFC have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such

-8-

Claims and Encumbrances attaching automatically to the proceeds in the same manner and priority, except as specifically provided in the APA, and (b) shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Debtors' assets conveyed to SFC.  All Claims and Encumbrances of record as of the date of this Order shall be removed and stricken as against the Purchased Assets in accordance with the foregoing, except as specifically provided in the APA, including, without limitation, as specifically provided for with respect to the HFG Debt, the People's Debt, and the Restructured Legacy Creditor Debt.  All entities are authorized and specifically directed to strike all such recorded Claims and Encumbrances against the Purchased Assets from their records, official or otherwise.

11.    Except as otherwise set forth herein, if any person or entity which has filed financing statements, mortgage, notices of lis pendens or other documents or agreements evidencing Claims and Encumbrances on the Purchased Assets shall not have delivered to the Debtors prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Claims and Encumbrances which the person or entity has or may assert with respect to the Purchased Assets, the Debtors are hereby authorized and directed upon closing, and SFC is hereby authorized upon closing, to execute and file such statements, instruments, releases and other documents on behalf

of such person or entity with respect to the Purchased Assets. Except as otherwise set forth herein, upon closing of the Sale Transaction, each of the Debtors' creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Claims and Encumbrances against the Purchased Assets.

12.     Upon closing, SFC (or its successors, assigns, agents or representatives) shall not be deemed to be (a) a successor to the Debtors, (b) de facto merged with the Debtors, or (c) a mere continuation of the Debtors. Without limiting the generality of the foregoing, and except as specifically provided in the APA, SFC (or its successors, assigns, agents or representatives) shall not be liable for any Claims and Encumbrances against the Debtors or any of its predecessors or affiliates or assets under any theory of antitrust, environmental, labor or employment, de facto merger, mere continuation, whether known or unknown, other than as expressly provided for in the APA or in this Order.

13.     The Debtors are authorized to assume and assign contracts pursuant to the Assignment and Assumption Procedures attached hereto as Exhibit 1, and such procedures are hereby approved.

Additional Provisions

14.     The Break-Up Fee (in the amount of $750,000) and the Expense Reimbursement (in an amount not to exceed $200,000) are hereby approved and the Debtors are hereby authorized and directed to perform their respective obligations thereunder without further application to or order from the Court. In the event of the approval of an Alternative Transaction under circumstances that would require the Debtors to pay the Break-Up Fee and Expense Reimbursement under the APA, the Break-Up Fee and Expense Reimbursement shall be paid out of the cash proceeds of the Alternative Transaction. In such event, the Break-Up Fee and

Expense Reimbursement shall constitute a super-priority administrative expense of the Debtors under Section 503(b) and 507(a) of the Bankruptcy Code as provided in the APA, but shall be subject in priority to the Debtors' indebtedness to Healthcare Finance Group, LLC ("HFG").

15. The provisions of this Order and the APA and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) confirming or consummating any plan of reorganization of the Debtors, (b) converting any of the Debtors' cases from chapter 11 to chapter 7, (c) dismissing any of the Debtors' bankruptcy cases or (d) appointing a chapter 11 trustee or examiner, and the terms and provisions of the APA as well as the rights and interests granted pursuant to this Order and the APA shall continue in this or any superseding case and shall be binding upon the Debtors, SFC and their respective successors and permitted assigns.

16. Each and every federal, state and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

17. Upon Closing, SFC shall pay to the Debtors the Purchase Price, less the Good-Faith Deposit. The consideration provided by SFC for the Purchased Assets under the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act and all other applicable laws.

18. Nothing contained in any order of any type or kind entered in this chapter 11 case or any related proceeding subsequent to entry of this Order, nor in any chapter 11 plan confirmed in this chapter 11 case, shall conflict with or derogate from the provisions of the APA or the terms of this Order. Further, the provisions of this Order and any actions taken pursuant hereto shall survive the entry of an order confirming any plan of reorganization or liquidation for the

Debtors, the conversion of the Debtors' case from chapter 11 to a case under chapter 7 of the Bankruptcy Code or the dismissal of the Debtors' bankruptcy cases.

19. To the extent, if any, anything contained in this Order conflicts with a provision in the APA, this Order shall govern and control.

20. SFC is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision. The consideration provided by SFC for the Purchased Assets is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

21. This Court retains jurisdiction, even after conversion of this chapter 11 case to a case under chapter 7, to (a) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order) and the terms of the APA, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith; (b) protect SFC (and its successors, assigns, agents and representatives) and the Purchased Assets from and against any of the Claims and Encumbrances; (c) resolve any disputes arising under or related to the APA or the Sale Transaction; (d) adjudicate all issues concerning alleged pre-Closing Claims and Encumbrances and any other alleged interests in and to the Debtors' assets, including the extent, validity, enforceability, priority and nature of all such alleged Claims and Encumbrances and any other alleged interests; (e) adjudicate any and all issues and/or disputes relating to the Debtors' right, title or interest in the Debtors' assets, the Motion and/or the APA; and (f) dispose of all claims that are not Assumed Liabilities under the APA.

22900.037/625516.1

22. From and after the date hereof, the Debtors shall act in accordance with the terms of the APA and the Debtors, to the extent they have not already done so, shall execute the APA at or prior to Closing.

23. This Order constitutes an authorization of conduct by the Debtors and nothing contained herein shall be deemed to constitute a ruling with regard to the sovereign immunity of any state. The failure of any state to object to the entry of this Order shall not operate as a waiver with respect thereto.

24. This Order and the APA shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, all successors and assigns of SFC, the Debtors and their affiliates and subsidiaries, the Debtors' assets, and any subsequent trustee appointed in the Debtors' chapter 11 cases or in any chapter 7 case or upon (a) a conversion of this chapter 11 case to a case under chapter 7 or (b) dismissal of the Debtors' bankruptcy case.

25. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the APA and each and every provision, term and condition thereof be, and therefore is, authorized and approved in its entirety.

26. The provisions of this Order are nonseverable and mutually dependent.

27. The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the APA, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

28. This Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, or otherwise.

29. Notwithstanding any other provision in this Order, the liens of the Pension Benefit Guaranty Corporation ("PBGC") and Clifford Zucker as Plan Custodian on behalf of the Legacy Creditors (the "Plan Administrator") shall be released at Closing upon payment to PBGC and the Plan Administrator at Closing of 3 million dollars ($3,000,000.00), - with 51% to PBGC and 49% to the Plan Custodian, plus one half of the Plan Administrator's costs up to a maximum of $50,000.00, and payment of PBGC's travel costs in the amount of $6,756.00.

30. Notwithstanding anything in the Motion or the APA to the contrary, the Medicare Provider Agreements entered into by the Debtors shall not be considered an "asset" that may be sold pursuant to section 363 of the Bankruptcy Code. In the event that the Buyer elects to accept the Debtors' Medicare Provider Agreements, identified by the CMS Certification Numbers listed on **Schedule A** hereto (the "Provider Agreements"), then (1) as of the Closing Date, and in accordance with 11 U.S.C. section 365, the Debtors will assume their "Provider Agreements," and (2) as of the same date, the Buyer will accept automatic assignment of the Debtors' "Provider Agreements" under 42 C.F.R. section 489.18. Thereafter, said "Provider Agreements" will be governed exclusively by the Medicare statute, regulations, policies and procedures, and without regard to bankruptcy law. These include, but are not limited to, repayment of Civil Monetary Penalties, and adjustment of all payments to the Buyer, to account for all prior overpayments and underpayments, including those relating to the pre-petition and pre-sale periods.

31. Notwithstanding anything in the Motion or the APA to the contrary, no Medicaid Provider Agreements entered into by the Debtors shall be considered an "asset" that may be sold pursuant to section 363 of the Bankruptcy Code. In the event that the Buyer elects to accept the Debtors' Medicaid Provider Agreements entered into by the Debtors, then, (1) as of the Closing

Date, and in accordance with 11 U.S.C. section 365, the Debtors will assume said Medicaid Provider Agreements, and (2) as of the same date, the Buyer will accept automatic assignment of the Debtors' Medicaid Provider Agreements. Thereafter, said Medicaid Provider Agreements will be governed exclusively by their terms, the Medicaid statutes, regulations, policies and procedures, and without regard to bankruptcy law. These include, but are not limited to, adjustment of all payments to the Buyer, to account for all prior overpayments and underpayments, including those related to the pre-petition and pre-sale periods.

    Dated: May 14, 2015                                         By the court

*Alan H. W. Shiff*
Alan H. W. Shiff
**United States Bankruptcy Judge**

SCHEDULE A

CMS CERTIFICATION NUMBERS

**JMH**

Medicare – 070008

Medicare Psych Unit – 07S008

**HCHS**

Medicare – 07-7005

Medicare Hospice – 07-1520

EXHIBIT 1

Set forth below are the procedures for assumption and assignment of executory contracts and unexpired leases to be employed with respect to the sale of all or substantially all of the assets of Johnson Memorial Medical Center, Inc., Johnson Memorial Hospital, Inc., Home & Community Health Services, Inc., and Johnson Health Care, Inc., debtors and debtors-in-possession (collectively, the "Seller Debtors") in their chapter 11 cases pending in the United States Bankruptcy Court for the District of Connecticut.

The Seller Debtors propose to sell substantially all of their assets to Saint Francis *Care*, Inc. (the "Purchaser") as set forth in that certain Amended and Restated Asset Purchase Agreement, dated March 27, 2015, by and among SFC and the Seller Debtors (the "APA"). The Sale Transaction pursuant to the APA is subject to approval by the Bankruptcy Court pursuant to section 363 of title 11 of the United States Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

a.      Not less than thirty days prior to the Closing (as defined in the APA), the Purchaser shall provide to the Seller Debtors (i) documentation identifying all Contracts the Purchaser wishes to be assumed by the Seller Debtors and assigned by the Seller Debtors to the Purchaser at the Closing (the "Transferred Contracts"); (ii) documentation identifying all Contracts that the Purchaser may, at a later date, wish to be assigned by the Seller Debtors (the "Designated Contracts"); and (iii) all Contracts that the Purchaser will not be seeking to be assigned by the Seller Debtors (the "Excluded Contracts").

b.      At any time between the Closing and the 10th day following the Closing, the Purchaser may re-designate any Designated Contract as either a Transferred Contract or an Excluded Contract. If the Purchaser does not re-designate any Designated Contract by the 10th day following the Closing, such Designated Contract shall be deemed an Excluded Contract as of such date. The Seller Debtors agree not to reject any Contract on or before the 10th day following the Closing except for Excluded Contracts.

c.      The Seller Debtors shall seek the Court's authority to reject Excluded Contracts.

d.      Within five Business Days of receiving documentation from the Purchaser designating a Contract as a Transferred Contract, the Seller Debtors shall serve a notice (the "Assignment Notice") by overnight delivery service on each non-debtor counterparty to such contract that the Seller Debtors intend to assume and assign such contract to the Purchaser. Such notice shall include the Seller Debtors' calculation of any cure costs related to such contract.

e.      Objections, if any, to the proposed cure costs or to the proposed assumption and assignment of a Transferred Contract, including, but not limited to, objections related to adequate assurance of future performance or objections relating to whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, the Purchaser, must be in writing and filed with the Court and served on the Seller Debtors and the Purchaser so as to be received not later than ten days after receipt of an Assignment Notice.

22900.037/625516.1

   f. Any non-debtor counterparty to a Transferred Contract who fails to timely file an objection to the proposed Cure Costs or the proposed assumption and assignment of a Transferred Contract by the Objection Deadline will be deemed to have consented to such Cure Costs and the assumption and assignment of such Transferred Contract, and such party shall forever be barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Seller Debtors, their estates or the Purchaser.

   h. If the non-debtor counterparty to a Transferred Contract fails to timely object to the assumption and assignment of a Transferred Contract or the proposed Cure Costs relating thereto by the Objection Deadline, or upon the resolution of any timely objection by agreement of the parties or order of the Court approving an assumption and assignment, such Transferred Contract shall be deemed to be assumed and assigned to the Purchaser and the proposed Cure Costs related to such Transferred Contract shall be established and approved in all respects, subject to the conditions set forth below.

   i. The Seller Debtors' decision to assume and assign the Transferred Contracts is subject to Court approval and consummation of the sale of the Seller Debtors' assets to the Purchaser.  Accordingly, the Seller Debtors shall be deemed to have assumed and assigned each of the Transferred Contracts as of the date and effective only upon the Closing Date, and absent such closing, each of the Transferred Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.