UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: | Chapter 11 |
| JOHNSON MEMORIAL<br>MEDICAL CENTER, INC., et al.,[1] | Jointly Administered under<br>Case No. 15-20056 |
| Debtors. | |

**APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES FOR REID AND RIEGE, P.C. AS COUNSEL TO THE DEBTORS**

Submitted by:

Jon P. Newton
Federal Bar No. ct03376
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103-2600
Phone (860) 278-1150
Fax (860) 240-1002
jnewton@rrlawpc.com

---

[1] Johnson Memorial Medical Center, Inc., Case No. 15-20056, Johnson Memorial Hospital, Inc., Case No. 15-20057, Home & Community Health Services, Inc., Case No. 15-20060, Johnson Health Care, Inc., Case No. 15-20061, The Johnson Evergreen Corporation, Inc., Case No. 15-20062, Johnson Professional Associates, P.C., 15-20063.

22900.040/626123.1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re: | Chapter 11 |
| JOHNSON MEMORIAL MEDICAL CENTER, INC., et al.,[1] | Jointly Administered under Case No. 15-20056 |
| Debtors. | |

## SUMMARY SHEET

**NAME OF APPLICANT**: Reid and Riege, P.C.

**ROLE IN CASE**: Counsel to the Debtors

**FEES AND EXPENSES PREVIOUSLY REQUESTED**: None

### CURRENT APPLICATION

For Period January 14, 2015 through March 31, 2015

Fees Requested: $481,321.25      Expenses Requested: $25,878.48

| Names of Professionals | Hours Billed | Rate | Total for Application |
|---|---|---|---|
| Julia P. Boisvert | 56.20 | $195.00 | $10,959.00 |
| Julia P. Boisvert | 174.20 | $205.00 | $35,711.00 |
| John Paul Callahan | 19.60 | $195.00 | $3,822.00 |
| John Paul Callahan | 52.30 | $205.00 | $10,721.50 |
| Katherine E. Coleman | 2.20 | $195.00 | $429.00 |
| Thomas V. Daily | 19.80 | $420.00 | $8,316.00 |
| Thomas V. Daily | 33.60 | $430.00 | $14,448.00 |
| Louis J. Donofrio | 0.40 | $400.00 | $160.00 |
| Dominic Fulco | 1.00 | $485.00 | $485.00 |
| John V. Galiette | 1.40 | $460.00 | $644.00 |
| Nicholas J. Harding | 38.80 | $480.00 | $18,624.00 |
| Eric Henzy | 80.10 | $445.00 | $35,644.50 |
| Eric Henzy | 173.50 | $455.00 | $78,942.50 |
| John M. Horak | 3.50 | $520.00 | $1,820.00 |
| John M. Horak | 8.80 | $530.00 | $4,664.00 |
| Robert Kazior | 5.20 | $220.00 | $1,144.00 |
| Earl F. McMahon | 0.60 | $425.00 | $255.00 |
| Earl F. McMahon | 0.70 | $435.00 | $304.50 |

| Name | Hours | Rate | Total |
|---|---|---|---|
| Christine M. Miller | 18.40 | $275.00 | $5,060.00 |
| Christine M. Miller | 100.40 | $290.00 | $29,116.00 |
| Mary Mintel Miller | 4.10 | $225.00 | $922.50 |
| Ursula B. Mongrain – paraprofessional | 4.50 | $210.00 | $945.00 |
| Ursula B. Mongrain | 8.10 | $215.00 | 1,741.50 |
| Jon P. Newton | 72.20 | $445.00 | $32,129.00 |
| Jon P. Newton | 241.30 | $455.00 | $109,791.50 |
| Brian O'Donnell | 1.30 | $405.00 | $526.50 |
| Agnes Romanowska | 6.30 | $205.00 | $1,291.50 |
| Agnes Romanowska | 50.00 | $215.00 | $10,750.00 |
| Adam C. Rose | 9.90 | $310.00 | $3,069.00 |
| Linda A. Rubes - paraprofessional | 0.70 | $175.00 | $122.50 |
| Linda A. Rubes | 2.50 | $180.00 | $450.00 |
| Desmond M. Ryan | 22.00 | $195.00 | $4,290.00 |
| Desmond M. Ryan | 3.50 | $205.00 | $717.50 |
| Mark X. Ryan | 2.20 | $445.00 | $979.00 |
| Mark X. Ryan | 1.25 | $455.00 | $568.75 |
| Peter K. Rydel | 10.50 | $350.00 | $3,675.00 |
| Peter K. Rydel | 3.60 | $360.00 | $1,296.00 |
| Susan M. Seamans - paraprofessional | 3.30 | $165.00 | $544.50 |
| Susan M. Seamans | 2.80 | $175.00 | $490.00 |
| Edward B. Spinella | 4.60 | $245.00 | $1,127.00 |
| Edward B. Spinella | 7.70 | $255.00 | $1,963.50 |
| Sharon Spinelli- paraprofessional | 0.60 | $235.00 | $141.00 |
| Sharon Spinelli | 0.20 | $240.00 | $48.00 |
| Barbara A. Taylor | 6.10 | $300.00 | $1,830.00 |
| Barbara A. Taylor | 4.00 | $310.00 | $1,240.00 |
| Mindy S. Tompkins | 10.80 | $300.00 | $3,240.00 |
| Mindy S. Tompkins | 114.80 | $315.00 | $36,162.00 |
| **TOTAL** | 1,389.55 | $346.37 | $481,321.25 |

---

[1] Johnson Memorial Medical Center, Inc., Case No. 15-20056, Johnson Memorial Hospital, Inc., Case No. 15-20057, Home & Community Health Services, Inc., Case No. 15-20060, Johnson Health Care, Inc., Case No. 15-20061, The Johnson Evergreen Corporation, Inc., Case No. 15-20062, Johnson Professional Associates, P.C., 15-20063.

22900.040/626123.1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In Re:<br><br>JOHNSON MEMORIAL<br>MEDICAL CENTER, INC., et al.,[1]<br><br>Debtors | Chapter 11<br><br>Jointly Administered under<br>Case No. 15-20056 |

## APPLICATION FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES FOR REID AND RIEGE, P.C. AS COUNSEL TO THE DEBTORS

Reid and Riege, P.C., the applicant herein (the "Applicant"), hereby submits, pursuant to 11 U.S.C. 331, Federal Rule of Bankruptcy Procedure 2016(a) and Local Rule of Bankruptcy Procedure 2016-1, its Application for Allowance of Fees and Reimbursement of Expenses for Reid and Riege, P.C. as Counsel to the Debtors (the "Application") and, in support thereof, respectfully represents as follows:

A. **Background**

1. On January 14, 2015 (the "Petition Date"), Johnson Memorial Medical Center, Inc. ("JMMC"), Johnson Memorial Hospital, Inc. ("JMH"), the Johnson Evergreen Corporation ("JEC"), Home & Community Health Services, Inc. ("HCHS"), Johnson Health Care, Inc. ("JHC"), and Johnson Professional Associates, P.C. ("JPA"; together with JMMC, JMH, JEC, HCHS and JHC, the "Debtors") filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy

---

[1] Johnson Memorial Medical Center, Inc., Case No. 15-20056, Johnson Memorial Hospital, Inc., Case No. 15-20057, Home & Community Health Services, Inc., Case No. 15-20060, Johnson Health Care, Inc., Case No. 15-20061, The Johnson Evergreen Corporation, Inc., Case No. 15-20062, Johnson Professional Associates, P.C., 15-20063.

22900.040/626123.1                    -1-

Code sections 1107(a) and 1108. The Court has entered an order for the joint administration of the Debtors' cases.

2. The Debtors, except for JPA, are private, not for profit corporations. JMMC is the parent corporation of JMH, JHC and HCHS. JMMC also owns real estate in Enfield, Connecticut, including two medical office buildings. JMMC's revenue in 2014 was approximately $1.2 million.

3. JMH owns and operates a ninety-two bed, acute care hospital located in Stafford Springs, Connecticut. JMH also leases space in the Enfield property from JMMC, where JMH operates a surgery center, an advanced wound care center, and an infusion center. JMH offers a comprehensive array of inpatient and outpatient services, including medical and surgical, obstetrics and gynecology, pediatrics, behavioral health, intensive/coronary care, infusion and chemotherapy, rehabilitation and emergency care. JMH has approximately 607 employees and its revenue in 2014 was approximately $67 million.

4. JEC owns and operates a 180-bed skilled nursing facility located in Stafford Springs, Connecticut. JEC leases the land on which the nursing facility is located from JMH. Services provided by JEC include skilled nursing care, palliative/hospice care, physical medicine and rehabilitation, occupational therapy, speech therapy, restorative nursing, wound management, pain management and nutritional education. JEC has approximately 281 employees and its 2014 revenue was approximately $16.6 million.

5. HCHS provides home health and hospice care to residents of North Central Connecticut. Services provided by HCHS include skilled nursing, behavioral health, wound care, hospice, bereavement, palliative care, physical, occupational and joint replacement therapy, cancer care rehabilitation, cardio/respiratory rehabilitation, health screenings, flu clinics and

health education programs. HCHS has approximately 67 employees and its revenue in 2014 was approximately $5.64 million.

6. JHC provides occupational medicinal services. JHC works exclusively with businesses, and offers, among other services, effective management of workers' compensation cases and return to work programs. Services provided by JHC include physical exams, drug screenings, rehabilitation, worksite assistance focused on safety and productivity, ergonomic evaluations, medical surveillance exams, travel immunizations, and educational programs, clinics and presentations. JHC has approximately six employees and annual revenue of approximately $525,000.

7. JPA revenue in 2014 was approximately $3.3 million.

8. Since prior to 2008, the Debtors have faced significant financial operating deficits and struggled to maintain financial stability, especially in light of national trends of shrinking reimbursement levels, lower investment returns, and the need for hospitals generally to make ongoing and substantial investments in new medical and information technologies and facilities. Confronted with the reality that, due to market and government regulatory forces in the health care industry, lack of capital, reduced government reimbursement rates, low census and an unsustainable level of debt, continuing to operate as independent, stand alone entities would be extremely difficult, the Debtors commenced these cases to sell substantially all of their assets, without delay, to Saint Francis *Care*, Inc., pursuant to Bankruptcy Code section 363. Such a sale will preserve and maximize the going concern value of the Debtors' properties, preserve and provide jobs for the Debtors' employees, and allow for the continued delivery of healthcare services to residents of North Central Connecticut. The Debtors believe that the proposed sale is

the best available alternative to accomplish the foregoing under all of the facts and circumstances.

9. Prior to the Petition Date, the Debtors employed the Applicant as their attorneys in connection with the Debtors' financial difficulties and the preparation for and commencement of their Chapter 11 cases. As a result of such employment, the Applicant has become very familiar with the Debtors' businesses and affairs and many of the legal issues which have arisen, and may arise, in their Chapter 11 cases. The Applicant has gained the confidence of the Debtors' management.

10. On March 8, 2015, the Court, upon the Debtors' application under Bankruptcy Code section 327(a) (the "Retention Application"), entered a certain Order Authorizing Employment of Attorneys Nunc Pro Tunc (the "Retention Order"), pursuant to which the Debtors were authorized to retain the Applicant post-petition.

11. In the Retention Application, the nature and extent of the Applicant's services included the following:

    a. Giving the Debtors legal advice with respect to their powers and duties as debtors in possession and the continued operation of their businesses and management of their properties;

    b. Taking necessary action to enjoin and stay, until final decree, the continuation of judicial proceedings against the Debtors, if any;

    c. Representing the Debtors in connection with adversary proceedings which may be instituted in this Court;

    d. Preparing on behalf of the Debtors the necessary applications, motions, complaints, answers, orders, reports and other legal papers; and

   e. Performing all other legal services for the Debtors which may be necessary in these cases.

  12. In the Retention Application and supporting affidavit, the Applicant indicated its willingness to receive compensation on an hourly basis, subject to Court approval under the terms of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. As set forth in the Retention Application, the Applicant's hourly billing rates are as follows: $145.00 to $285.00 for paraprofessionals; $205.00 to $285.00 for associates; and $285.00 to $545.00 for shareholders.

  13. The Applicant has performed services for the Debtors in accordance with the Retention Order and relating to and arising under the provisions of the Bankruptcy Code. Such services are more particularly described and categorized in **EXHIBIT A** hereto.

  14. The services for which compensation is requested were performed for and on behalf of the Debtors and not on behalf of any other person or entity.

  15. This is the Applicant's first fee application in this case.

  16. No payments have been made or promised to the Applicant for services rendered in any capacity whatsoever in connection with these cases except as set forth herein. Prior to the Filing Date, the Applicant received a pre-petition retainer of approximately $71,098.50, which was paid by the Debtors. Under the terms of that certain Amended Order Providing for Escrow of Funds for Retained Professionals and Administrative Claims, pursuant to which the Debtors deposit a monthly payment into an escrow account for the payment of compensation and reimbursement for estate professionals, the Applicant is obligated, upon Court allowance of its fees and expenses, to apply its pre-petition retainer before receiving funds in the escrow.

  17. No agreement or understanding exists between the Applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with

these cases, except for agreements regarding the sharing of compensation as a member or regular associate of a firm of lawyers.

18. As reflected in **EXHIBIT A**, the Applicant's services have been substantial. Such services have helped stabilize the Debtors' businesses and resulted in significant benefits to the Debtors, maximizing the Debtors' ability to reorganize by means of a sale.

19. The reasonable value of the services rendered by the Applicant as counsel to the Debtors for the period covering the Petition Date through March 31, 2015 is $481,321.25. See **EXHIBIT A**. In addition, the Applicant has incurred expenses in the amount of $25,878.48. See **EXHIBIT A**.

B. **Case Status**

20. With respect to JMMC, JMH, HCHS and JHC, such Debtors, on March 27, 2015, filed a motion to sell substantially all of their assets to St. Francis *Care*, Inc. A hearing on this sale took place on May 6, 2015 at 10:00 a.m. On or about May 14, 2015, the Court entered an order approving the sale. The Debtors and St. Francis *Care*, Inc. are now in the process of seeking to obtain the requisite approvals from the State of Connecticut.

21. With respect to JEC, such Debtor, on January 15, 2015, filed a motion to sell substantially all of its assets to St. Francis *Care*, Inc. On March 27, 2015, the Court entered an order approving bid procedures in connection with the proposed sale. A hearing on this sale is scheduled to take place on July 28, 2015 at 2:00 p.m.

22. JPA continues to operate as a debtor and debtor-in-possession. JPA is currently not part of either the proposed sale of JMMC, JMH, HCHS and JHC, on the one hand, or JEC, on the other hand. No disclosure statement or plan has been filed for JPA.

WHEREFORE, the Applicant requests an order of this Court allowing it the sum of $481,321.25 as compensation for professional services rendered and the amount of $25,878.48 for reimbursement of necessary and actual costs and expenses for the period covering the Petition Date through March 31, 2015, and granting it such other and further relief as is just and equitable.

Dated at Hartford, Connecticut this 20th day of May, 2015.

REID AND RIEGE, P.C.

By /s/ Jon P. Newton
Jon P. Newton, Esq.
Federal Bar No. ct03376
Reid and Riege, P.C.
One Financial Plaza, 21st Floor
Hartford, CT 06103
(860) 278-1150
jnewton@rrlawpc.com