**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| JOHNSON MEMORIAL | ) | Jointly Administered |
| MEDICAL CENTER, INC., et al.,[1] | ) | Case No. 15-20056 |
| | ) | |
| Debtors. | ) | |

**JOHNSON MEMORIAL HOSPITAL, INC.'S MOTION FOR**
**APPROVAL OF TELE-STROKE COVERAGE HOSPITAL AGREEMENT**

Johnson Memorial Hospital, Inc. ("JMH"), for its motion for approval of the UMass Memorial Tele-Stroke Coverage Hospital Agreement annexed hereto as Exhibit A (the "UMass Agreement"), respectfully states:

1. On January 14, 2015 (the "Petition Date"), JMH, Johnson Memorial Medical Center, Inc. ("JMMC"), Johnson Health Care, Inc. ("JHC"), The Johnson Evergreen Corporation ("JEC"), Home and Community Health Services, Inc. ("HCHS"), and Johnson Professional Associates, P.C. ("JPA"; together with JMMC, JMH, JEC, HCHS and JHC, the "Debtors"), filed voluntary petitions for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as a debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. JMMC, JMH, JHC, JEC and HCHS are private, not for profit corporations. JMMC is the parent corporation of JMH, JHC, JEC and HCHS. JMMC also owns real estate in

---

[1] Johnson Memorial Medical Center, Inc., Case No. 15-20056, Johnson Memorial Hospital, Inc., Case No. 15-20057, Home & Community Health Services, Inc., Case No. 15-20060, Johnson Health Care, Inc., Case No. 15-20061, The Johnson Evergreen Corporation, Inc., Case No. 15-20062, Johnson Professional Associates, P.C., 15-20063.

-1-

22900.036/629049.1

Enfield, Connecticut, including two medical office buildings. JMMC's revenue in 2014 was approximately $1.2 million.

3. JMH owns and operates a ninety-two bed, acute care hospital located in Stafford Springs, Connecticut. JMH also leases space in the Enfield property from JMMC, where JMH operates a surgery center, an advanced wound care center, and an infusion center. JMH offers a comprehensive array of inpatient and outpatient services, including medical and surgical, obstetrics and gynecology, pediatrics, behavioral health, intensive/coronary care, infusion and chemotherapy, rehabilitation and emergency care. As of the Petition Date, JMH had 607 employees, and its revenue in 2014 was approximately $67 million.

4. JEC owns and operates a 180 bed skilled nursing facility located in Stafford, Connecticut. JEC leases the land that the nursing facility is located on from JMH. Services provided by JEC include skilled nursing care, palliative/hospice care, physical medicine and rehabilitation, occupational therapy, speech therapy, restorative nursing, wound management, pain management and nutritional education. As of the Petition Date, JEC had 281 employees, and its 2014 revenue was approximately $16.6 million.

5. HCHS provides home health and hospice care to residents of North Central Connecticut. Services provided by HCHS include skilled nursing, behavioral health, wound care, hospice, bereavement, palliative care, physical, occupational and joint replacement therapy, cancer care rehabilitation, cardio/respiratory rehabilitation, health screenings, flu clinics and health education programs. As of the Petition Date, HCHS had 67 employees, and its revenue in 2014 was approximately $5.64 million.

6. JHC provides occupational medicine services. JHC works exclusively with businesses, and offers, among other services, effective management of workers' compensation cases and return to work programs. Services provided by JHC include physical exams, drug screenings, rehabilitation, worksite assistance focused on safety and productivity, ergonomic evaluations, medical surveillance exams, travel immunizations, and educational programs, clinics and presentations. As of the Petition Date, JHC had six employees, and its revenue in 2014 was approximately $525,000.

7. JPA is a multi-specialty physician group with offices in both Stafford Springs and Enfield. JPA's revenue in 2014 was approximately $3.3 million.

8. Since prior to 2008, the Debtors have faced significant financial operating deficits and struggled to maintain financial stability, especially in light of national trends of shrinking reimbursement levels, lower investment returns, and the need for hospitals generally to make ongoing and substantial investments in new medical and information technologies and facilities. In October 2008, JMMC, JMH and JEC commenced chapter 11 bankruptcy cases. On August 9, 2010, the United States Bankruptcy Court for the District of Connecticut, Hartford Division, confirmed JMMC's, JMH's and JEC's chapter 11 plan in the 2008 cases.

9. After JMMC's, JMH's and JEC's emergence from chapter 11 in 2010, the Debtors continued to face operational and financial difficulties and had difficulty servicing their remaining debt. JMMC, JMH and JEC emerged from the 2008 bankruptcy cases with nearly $30,000,000 of debt to People's United Bank ("People's") and over $10,000,000 of debt to its unsecured creditors from the 2008 cases. Recognizing that it would be extremely difficult to remain viable as stand-alone entities, on July 12, 2012, the Debtors entered into an affiliation

with Saint Francis *Care*, Inc. ("Saint Francis"), the terms of which are set forth in a Master Affiliation Agreement, under which Saint Francis provides certain financial support to the Debtors; a Clinical Affiliation Agreement, under which Saint Francis provides certain clinical services and support to the Debtors; and a Business Process Outsourcing Agreement, under which Saint Francis provides certain business services and support to the Debtors. Since entering into the affiliation with the Debtors, Saint Francis has provided clinical and management support to the Debtors, resulting in improved operating results. In addition, prior to the Petition Date Saint Francis paid the Debtors more than $2 million pursuant to the Master Affiliation Agreement, which was used to make payments under JMMC's, JMH's and JEC's chapter 11 plan confirmed in 2010. Saint Francis also provided direct financial support to the Debtors in the form of loans and deferred accounts payable, which allowed the Debtors to operate through several particularly difficult financial periods. However, despite the support from Saint Francis, the Debtors reported a net loss of $4,622,272 and current liabilities that exceeded current assets by $14,836,839 on its audited financial statements for year ending September 30, 2013. The Debtors' performance improved significantly in 2014, but this was due in large part to the affiliation with and support of Saint Francis.

10. After working under these affiliation agreements for over a year, the Debtors and Saint Francis determined that more financial restructuring would be necessary and that this could best be achieved by an acquisition by Saint Francis of the assets of the Debtors. JMMC, JMH, HCHS, JHC and JEC commenced these chapter 11 cases in order to effectuate the sale of substantially all of their assets to Saint Francis pursuant to Bankruptcy Code section 363. On May 11, 2015, this Court entered an order approving the sale of substantially all of the assets of

JMMC, JMH, HCHS and JHC to Saint Francis.  Closing on that sale is waiting for regulatory approval from the relevant agencies of the State of Connecticut.  JEC has filed a separate motion in its chapter 11 case seeking the Court's authority to sell substantially all of its assets to Saint Francis, and a hearing on that motion is scheduled for July 27, 2015.

11. Certain patient procedures performed by JMH require that the patient be screened for stroke risk.  It is not financially or otherwise feasible for JMH to have staff available 24/7 to perform this type of testing for stroke risk.  The result is that JMH loses business because patients must go elsewhere, and patients who otherwise would go to JMH are forced to incur the inconvenience and, potentially, risk of having to travel to another hospital that is further away.

12. UMass Memorial Medical Group, Inc. ("UMass"), provides what is known as tele-stroke coverage, meaning emergency neurology services (including without limitation stroke), which may include but not be limited to indirect physical examination, history taking, diagnostic protocols, diagnostic tests (for example, blood glucose, blood pressure), imaging procedures/analysis and consultation with specialists that will enable the examining and consulting physicians at JMH to arrive at the appropriate diagnosis and therapeutic interventions. Essentially this service allows for the required testing to take place remotely by specialists at UMass, thereby allowing JMH to provide the relevant services where such testing is required.

13. Pursuant to the UMass Agreement, UMass will provide the tele-stroke coverage in exchange for fees for specific services provided and modest annual fee.  Given the pendency of JMH's chapter 11 case and JMH's financial condition, UMass is concerned about receiving payment for the services provided.  Accordingly, UMass and JMH have agreed that JMH shall deposit fifteen thousand dollars ($15,000) (the "Deposit") with UMASS.  If at any time JMH

does not timely pay the required fees, UMass may use the Deposit to make such payments. Upon JMH's emergence from its chapter 11 bankruptcy case, UMass shall return the Deposit to JMH. JMH also has agreed that if it fails to make the payments required, UMass may terminate the UMass Agreement pursuant to Section 6 of the UMass Agreement without need to seek relief from the bankruptcy automatic stay or other authority from the Bankruptcy Court.

14. By this Motion, JMH seeks the Court's authority to enter into the UMass Agreement and approval of the terms of the UMass Agreement, including the Deposit and relief from stay provisions. The amounts due under the UMass Agreement are modest, and the UMass Agreement will bring great benefit to JMH and JMH's patients, because it will allow JMH to perform procedures that it would otherwise not be able to perform. Because the UMass Agreement is fee for service, JMH is undertaking no risk, it will only pay for the services provided.

15. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been given to: (a) the U.S. Trustee; (b) counsel to HFG; (c) counsel to Peoples United Bank; (d) counsel to Saint Francis *Care*, Inc.; (e) counsel to Clifford Zucker; (f) counsel to the Pension Benefit Guaranty Corporation; (g) all parties requesting notice in these cases; and (h) the twenty largest unsecured creditors of each of the Debtors.

16. No prior request for the relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.

-6-

22900.036/629049.1

WHEREFORE, the Debtors respectfully request that this Court grant this motion, authorize the Debtors to enter into the UMass Agreement, and grant the Debtors such other and further relief as this Court deems just and proper.

Dated at Hartford, Connecticut this 14th day of July, 2015.

JOHNSON MEMORIAL HOSPITAL, INC.

By      /s/ Eric Henzy
       Eric Henzy
       Federal Bar No. ct12849
       Jon P. Newton
       Federal Bar No. ct03376
       Reid and Riege, P.C.
       One Financial Plaza
       Hartford, CT 06103-2600
       (860) 278-1150
       Fax (860) 240-1002
       ehenzy@reidandriege.com
       jnewton@rrlawpc.com
       Its Attorney